UNITED STATES, Appellee

v.

Dwight E. GREENE, Specialist
U.S. Army, Appellant.

No. 67,297.
CM 8902961.

U.S. Court of Military Appeals.

Argued Oct. 1, 1992.
Decided Feb. 25, 1993.

For Appellant: *Captain Timothy M. Lawlor* (argued); *Colonel Robert B. Kirby and Captain Michael P. Moran,* (on brief); *Lieutenant Colonel James H. Weise and Captain Holly R. Desmarais.*

For Appellee: *Captain Robert J. Walters* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Joseph A. Russelburg, Major Joseph C. Swetnam* (on brief).

## Opinion of the Court

SULLIVAN, Chief Judge:

In September 1989, appellant was tried by a general court-martial composed of officer and enlisted members at Kaiserslautern, Federal Republic of Germany. Contrary to his pleas, he was found guilty of rape and attempted sodomy, in violation of Articles 120 and 80, Uniform Code of Military Justice, 10 USC §§ 920 and 880, respectively. He was sentenced to a bad-conduct discharge, confinement for 10 years, total forfeitures, and reduction to the lowest enlisted grade. On January 30, 1990, the convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings and sentence in an unpublished opinion dated September 6, 1991.

This Court granted review of three assigned issues and specified review of three additional issues.[1] The issue which we find dispositive of this appeal is:

> WHETHER THE MILITARY JUDGE ERRED BY GRANTING TRIAL COUNSEL'S PEREMPTORY CHALLENGE OF SFC GOODE WHEN THE PEREMPTORY CHALLENGE WAS USED IN A DISCRIMINATORY FASHION AND THE EXPLANATION ARTICULATED BY TRIAL COUNSEL WAS NOT [RACE] NEUTRAL.

We hold that trial counsel did not meet his legal burden of coming forward with a race-neutral explanation for his peremptory challenge of Sergeant First Class (SFC) Goode, so the military judge erred as a matter of law in granting this challenge. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Her-*

---

1. 

  I

  WHETHER APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL DURING THE POST–TRIAL PHASE OF HIS CASE BECAUSE CIVILIAN DEFENSE COUNSEL DID NOT SUBMIT POST–TRIAL SUBMISSIONS UNTIL AFTER THE CONVENING AUTHORITY TOOK ACTION.

  II

  WHETHER THE STAFF JUDGE ADVOCATE ERRED BY MAKING A MISSTATEMENT OF FACT IN HIS POST–TRIAL RECOMMENDATION TO THE CONVENING AUTHORITY.

  The three specified issues not decided in this opinion are:

  I

  WHETHER THE DISCUSSION AND CONSIDERATION OF OTHER RAPE CASES BY THE COURT MEMBERS WHICH THEY HAD READ IN THE STARS AND STRIPES NEWSPAPER OR LEARNED FROM OTHER OUTSIDE SOURCES VIOLATED R.C.M. 1008 AND/OR THE MILITARY JUDGE'S SENTENCING INSTRUCTIONS, AND, THEREFORE, REQUIRE A REHEARING ON SENTENCING.

  II

  WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY GIVING THE INSTRUCTIONS ON SENTENCING BEFORE, RATHER THAN AFTER, CLOSING ARGUMENTS BY COUNSEL IN VIOLATION OF R.C.M. 1005.

  III

  WHETHER THE PART OF THE INSTRUCTION WHICH THE MILITARY JUDGE GAVE ON "MORAL CERTAINTY" VIOLATED THE HOLDING OF *CAGE V. LOUISIANA,* 498 U.S. 39, 111 S.CT. 328 (1990).

*nandez v. New York,* —— U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). *See generally United States v. Bishop,* 959 F.2d 820 (9th Cir.1992).

Appellant is a black soldier accused of raping and sodomizing a white female soldier in her barracks. During his court-martial, trial counsel peremptorily challenged a "black-Panamanian" enlisted member, SFC Goode. No effort was made by trial counsel to challenge SFC Goode for cause.

During general *voir dire* of the proposed court-martial members and in response to a question from civilian defense counsel, SFC Goode stated that he had been in the Army for eighteen and one-half years and that he "grew up in Panama." During the following individual *voir dire,* civilian defense counsel (CDC) asked SFC Goode to elaborate on his attitude towards findings and sentencing:

CDC: You also, I think answered affirmatively to a question. I want to make sure that you understand what was being asked.

I asked a question about a discharge, and the charge sheet, and the charge on the charge sheet. Are you saying that if Specialist Greene is found guilty on one of those charges on the charge sheet, without knowing anything else about the case, just the fact that he's guilty, are you saying you would vote to eliminate him or are you saying that's one of [the] things you would consider when you've heard all of the evidence?

SFC Goode: I figure that if he's guilty—if we reach a verdict of guilty, that would entail everything that we have heard. And I'm saying that, "yes," I think I would vote to eliminate him from the service.

CDC: All right.

SFC Goode: Go ahead, sir.

CDC: No, you explain, I didn't mean to interrupt you.

SFC Goode: You said if he's found guilty, if I would vote to have him eliminated?

CDC: Okay, you got to two areas here. One is a vote of guilty or not guilty and one is a vote on the punishment. Okay. You sat as juror before. You understand that. I mean a panel member.

SFC Goode: Yes.

CDC: My question was geared—was trying to take away and make it a little bit more sterile than what you just said. My question was are you saying, if you see the charge rape and you know he's been convicted and you know nothing else about the case, nothing else but that rape and conviction. Are you saying that you would vote to eliminate him? Or are you saying that having heard all of the evidence in the case, both on findings and sentencing, that you would consider eliminating him or would vote to eliminate him even after hearing all the evidence.

SFC Goode: I would have to take that into consideration after hearing the circumstance of the case.

CDC: Okay. So that in that case you might vote to eliminate him but you might not. Depending upon everything you hear?

SFC Goode: Exactly.

CDC: Thank you, Your Honor.

Trial counsel then asked SFC Goode two questions as follows:

TC: Thank you, Your Honor. SFC Goode, without knowing anything about the case whatsoever except the flyer that you have in front of you, at this point in the trial do you think you would have to consider the accused to be guilty or innocent? Right now.

SFC Goode: Right now he's innocent because a man is innocent until proven guilty.

TC: Back to this issue of sentencing and possible discharge. Again we've talked so much about it, going back and forth about it. I'd just like to ask you one more time. If he was convicted of either one of those charges or

both based on nothing else, no other evidence being presented would you say that a discharge is appropriate? Do you feel compelled to vote for a discharge, just based on the nature of the offense alone?

SFC Goode: I'm not trying to change what I've just said. Yes, I mean based on these articles right here, these charges. If I didn't hear anything else and I was to make a judgment he should be eliminated if I was to do so. That's what you're asking?

TC: If you had to.

SFC Goode: Yes.

TC: Just based on the presumed serious nature of the offense. Thank you. I have no other questions.

In response to questions by the military judge, SFC Goode stated he could follow the military judge's instruction and he would not be locked into any specific punishment. SFC Goode concluded his individual *voir dire* responses by stating to the military judge: "Now that you have put it that simply, sir, I would consider all sentences and make a determination when the time comes to [do] that."

Trial counsel then sought to peremptorily challenge SFC Goode. Defense counsel objected; he noted that SFC Goode and appellant are black, and asked for "a showing by the prosecution as to why the peremptory challenge was offered." Trial counsel offered two reasons in his explanation of his peremptory challenge:

TC: I asked the types of questions that the defense counsel would ask because I wanted to challenge him myself on the issue of predisposition of sentencing and in response to my questions he did show the somewhat inelastic attitude then, you yourself rehabilitated him and *my concern there was that he may hold it against me as the government representative for having put him in that position, where he had to cover ground and listen to the instructions that you gave him.* Going over all that with him again, as having a member of the panel.

*And number two, sir, he indicated that he was from the Republic of Panama, sir.*

MJ: I'm sorry, what?

TC: *He grew up in the Republic of Panama. Having just finished three years there as a defense counsel, I noticed different attitudes towards certain offenses.* One of those types of offenses being sexual offenses. That was another reason why I exercise[d] my peremptory challenge against Sergeant First Class Goode.

MJ: What kind of attitude are you talking about?

TC: *Well, the Latin macho type of attitude which I think a lot of the males in Panama still have; what we would call "a macho type of attitude," and that spills over into the sexual arena. Males are entitled to more, entitled to sex in some ways, and they go further in attempting to get sex than perhaps what you or me would consider standard. That's the feeling I— out for two and a half years. That's another reason why I exercised my peremptory challenge against Sergeant First Class Goode.*

(Emphasis added).

Civilian defense counsel again opposed the peremptory challenge and argued that the Government had failed to articulate a proper basis for the peremptory challenge. The military judge then granted the challenge:

MJ: Well, the challenge stands. I observed that, Sergeant First Class Goode's response to my questions. I felt like I had to pull teeth to get responses from him. I'm still not sure he understands what the process is in a court-martial even after my instructions on the questions. *And I found the first reason granted by the prosecutor is a substantially non-racial, non-gender, neutral explanation for challenging that member, especially when it's considered for a perempto-*

*ry challenge.* Are the parties ready to proceed?

(Emphasis added.)

———

In *United States v. Santiago–Davila,* 26 MJ 380 (CMA 1988), this Court applied *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to the military justice system. The Supreme Court in *Batson* held that a state prosecutor violates the Equal Protection Clause of the 14th Amendment when he exercises a peremptory challenge because of a potential juror's race or an assumption about that juror's race. *Id.* at 89, 106 S.Ct. 1712. *See also Georgia v. McCollum,* —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Subsequently, this Court unanimously held that the principles of *Batson* [2] apply to peremptory challenges by trial counsel at courts-martial. Then–Chief Judge Everett, speaking for the Court, based this holding either on the Due Process Clause of the Fifth Amendment or on congressional intent implied in Article 41(b), UCMJ, 10 USC § 841(b), and other provisions of the Uniform Code of Military Justice. *United States v. Santiago–Davila,* 26 MJ at 390.

■ Thus, a *Batson* problem exists in the military justice system when a trial counsel exercises a peremptory challenge to exclude "a member of a cognizable racial group," 476 U.S. at 96, 106 S.Ct. at 1723,

from membership on a court-martial and the challenged member is also of the same race as the accused. If defense counsel then makes a timely objection, a *prima facie* case of purposeful discrimination is made to which the Government must reply with a race-neutral explanation. *United States v. Moore,* 28 MJ 366, 368 (CMA 1989). The rule establishing a *prima facie* case of purposeful discrimination in these circumstances was adopted by our Court pursuant to the *Batson* mandate and our continued effort to improve the military justice system. *Id.*

Turning to the present case, the record reflects that appellant and SFC Goode, the prospective member peremptorily challenged by the Government, were both black men.[3] Moreover, defense counsel also objected to this peremptory challenge on the basis of *Batson.* Thus, under *United States v. Moore, supra,* appellant established a *prima facie* case of purposeful discrimination. Accordingly, trial counsel was clearly required to go forward with a "race-neutral explanation" for his peremptory challenge.

## I

In order to determine whether trial counsel proffered a race-neutral explanation for his peremptory challenge, this Court will consider three questions. First, was the part of trial counsel's explanation based on "Latin macho type of attitude" a race-neu-

---

**2.** The three-step process includes: (1) a defendant must make a *prima facie* showing that the prosecutor has exercised a peremptory challenge on the basis of race; (2) the burden then shifts to the Government to articulate a race-neutral explanation for striking the jurors in question; and (3) the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Batson v. Kentucky,* 476 U.S. 79, 97–98, 106 S.Ct. 1712, 1723–24, 90 L.Ed.2d 69 (1986).

**3.** Many courts have gone beyond the traditional suspect classifications used in Equal Protection analysis. *See Developments in the Law—Race and the Criminal Process,* 101 Harv.L.Rev. 1472, 1571 n.92 (1988). Consistent with a less rigid definition of "cognizable racial group," this Court has held that Hispanics should "be consid-

ered *a cognizable racial group*" when performing a *Batson* analysis. *United States v. Santiago–Davila,* 26 MJ 380, 391 (CMA 1988). The Supreme Court itself has also recognized Latinos or Hispanics as members of a cognizable racial group for purposes of analyzing discriminatory peremptory challenges. *See Hernandez v. New York,* —— U.S. ——, ——, 111 S.Ct. 1859, 1864, 114 L.Ed.2d 395 (1991) (the terms Latino and Hispanic are synonymous). Consequently, the purposeful exclusion of "Latinos" in a black man's criminal case might in certain circumstances also fall within the extension of *Batson* established in *Powers v. Ohio,* —— U.S. ——, ——, 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411 (1991) (white defendant has standing to challenge racially-motivated peremptory challenge against black members).

tral reason within the meaning of *Batson v. Kentucky, supra.* Second, was the remainder of trial counsel's explanation, *i.e.,* antagonism of the prospective member to the prosecution, a race-neutral reason? If both reasons fail to satisfy the requirement for race-neutral criteria, then the peremptory challenge clearly violates the *Batson* holding. If only one of the parts of the explanation is impermissible, then a third question arises: whether the two parts of trial counsel's explanation can be considered disjunctively [4] so as to establish the race-neutral justification required by *Batson* and its progeny.

▮▮ A plurality of the Supreme Court in *Hernandez v. New York,* —— U.S. ——, 111 S.Ct. at 1866, speaking through Justice Kennedy, defined a race-neutral explanation for purposes of *Batson* as follows:

A neutral explanation in the context of our analysis here means an *explanation based on something other than the race of the juror.* At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. *Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.*

(Emphasis added.) We note that Justices O'Connor and Scalia, concurring in the judgment in *Hernandez,* did not openly disagree with this part of the plurality opinion. —— U.S. at ——, 111 S.Ct. at 1873–75. *See Batson v. Kentucky,* 476 U.S. at 97–98, 106 S.Ct. at 1723.

▮▮ In the case *sub judice,* trial counsel inferred that SFC Goode was a Latino based on his status as a native of the Republic of Panama, a country with Span-ish roots.[5] Trial counsel also assumed that SFC Goode possessed a certain male-dominated attitude towards sexual relations with women as a Latino. He predicated the latter assumption on his own personal experiences in Panama with men other than appellant. Applicability of the "macho" assumption concerning SFC Goode was simply not substantiated by his responses in the record. *Hernandez v. New York, supra.* Moreover, its purported basis constituted a gross racial stereotype or anecdotal generalization which was clearly condemned in the *Batson* and *Hernandez* decisions. *See Powers v. Ohio,* —— U.S. at ——, 111 S.Ct. at 1366. Accordingly, we conclude that the part of trial counsel's explanation concerning SFC Goode's purported Latin macho attitude towards sexual offenses was not a race-neutral justification within the meaning of *Batson. See United States v. Bishop,* 959 F.2d at 825.

▮▮ The first part of trial counsel's explanation for peremptorily challenging SFC Goode fares somewhat better. Trial counsel suggested that SFC Goode might be antagonistic towards him as the Government's representative. He asserted that he might be blamed by SFC Goode for the latter's extensive questioning and repeated instructing by the military judge. We conclude that such a reason, at least facially, is a race-neutral explanation for this peremptory challenge. *See United States v. Roan Eagle,* 867 F.2d 436, 441–42 (8th Cir.), *cert. denied,* 490 U.S. 1028, 109 S.Ct. 1764, 104 L.Ed.2d 199 (1989). *See also United States v. Melton,* 883 F.2d 336 (5th Cir.1989); *United States v. Power,* 881 F.2d 733 (9th Cir.1989); *United States v. Garrison,* 849 F.2d 103 (4th Cir.), *cert.*

---

4. A disjunctive approach would permit the military judge to disregard any impermissible aspect of the explanation and to rely on any remaining permissible aspects of the explanation. This disjunctive approach was used by the military judge and provided the basis for the Court of Military Review's decision. *See Webster's Ninth New Collegiate Dictionary* 364 (1991).

5. This Court does not decide today whether an individual from the Republic of Panama is a member of a cognizable racial group. Although Panama is located in Central America and the official language of Panama is Spanish, we reserve this determination for another day. *Cf. Santiago–Davila v. United States,* 26 M.J. at 391 (Residing in Puerto Rico may not neces-

*denied*, 488 U.S. 996, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988).[6]

■ The third and critical question thus becomes whether an explanation based on multiple reasons, one of them patently impermissible, the other one permissible, satisfies *Batson*. In other words, can the reasons that constitute an explanation of a peremptory challenge be considered disjunctively by the military judge. We recognize that in *Batson v. Kentucky*, 476 U.S. at 98, 106 S.Ct. at 1723 and in *Powers v. Ohio*, —— U.S. at ——, 111 S.Ct. at 1370, the Supreme Court utilized language indicating its concern for exclusions "solely" on the basis of race. However, for the reasons stated below, we hold that an explanation, which includes "in part" a reason, criterion, or basis that patently demonstrates an inherent discriminatory intent, cannot reasonably be deemed race neutral. *See Hernandez v. New York*, —— U.S. at ——, 111 S.Ct. at 1866. *See generally Georgia v. McCollum*, —— U.S. at ——, 112 S.Ct. at 2358 ("It is an affront to justice to argue that a fair trial includes the right to discriminate against a group of citizens based upon their race.").

The Supreme Court introduced the *Batson* three-step process for evaluating equal-protection objections to peremptory challenges. The requirement for the prosecutor to articulate a race-neutral explanation was principally drawn from *Alexander v. Louisiana*, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972). *See Batson v. Kentucky*, 476 U.S. at 92, 106 S.Ct. at 1721.

In *Alexander*, prospective black grand jurors were excluded. The Lafeyette Parish jury commission used a questionnaire to create a pool of possible grand jurors, and that questionnaire included a space to indicate the race of the recipient. Based on answers to the questionnaire, the commission eliminated prospective jurors and narrowed the available pool. Although there was no direct evidence that race was the basis for excluding blacks from grand jury duty, the Supreme Court held that the presence of the racial-identity question provided an "opportunity for discrimination." *Alexander v. Louisiana*, 405 U.S. at 632, 92 S.Ct. at 1226. Certainly there were permissible questions on the questionnaire from which the commission could create a pool of jurors. *Id.* at 627 n.4, 92 S.Ct. at 1223 n.4. Nevertheless, the Court held that the State must "show[ ] that permissible racially neutral selection *criteria* and procedures" were used. *Id.* at 632, 92 S.Ct. at 1226 (emphasis added).

Moreover, in *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967), the Supreme Court rejected exclusion of black jurors from jury duty even though state officials asserted that they only selected personal acquaintances for jury duty. This justification was not considered apart from the fact that jury rolls were compiled from segregated tax lists.

Thus, the Supreme Court evaluates the totality of the relevant facts when confronted with claims of invidious discriminatory purpose. *See Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct.2040, 2048–49, 48 L.Ed.2d 597 (1976). Accordingly, we read *Batson v. Kentucky*, *supra*, as similarly requiring that all the reasons proffered by trial counsel be untainted by any inherently discriminatory motives. *See also Hernandez v. New York*, —— U.S. at —— – ——, 111 S.Ct. at 1867–68.

Most cases in which race-neutral explanations have been considered require the courts to scrutinize explanations that are facially neutral. However, several Federal appellate cases provide some guidance in the application of *Batson* and *Hernandez*

sarily imply that an individual is a member of the cognizable racial group of "Puerto Rican.").

**6.** The so-called "Hound Dog Rule" noted by Judge Cox in *United States v. Santiago–Davila, supra* at 393 n. *, is not at issue today. *See United States v. Moore*, 28 MJ 366, 369 (CMA 1989). We note, however, that trial counsel has the burden of offering a race-neutral explanation for his peremptory challenge, and an instinctual dislike or distrust of a prospective member does not rationally satisfy this concern. *Batson v. Kentucky*, 476 U.S. at 97–98, 106 S.Ct. at 1723–24.

to circumstances involving multiple reasons where at least one reason is racially motivated or based on a racial stereotype. Typically, in these cases courts have reviewed every reason or basis for racial neutrality. *See, e.g., Williams v. Chrans*, 957 F.2d 487 (7th Cir.)(although prosecution offered three specific neutral grounds for using a peremptory strike, court also considered a fourth "highly suspect" ground proffered by prosecution), *cert. denied*, — U.S. —, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992); *United States v. Clemons*, 941 F.2d 321, 325 (5th Cir.1991) (explanation consisted of three reasons—age, hairstyle, dress—all of which were reviewed for racial neutrality under clearly erroneous standard); *United States v. Alcantar*, 897 F.2d 436 (9th Cir. 1990)(where both legitimate and possibly illegitimate reasons are offered by the prosecution, the need for a meaningful adversarial hearing to discover the true motivation behind the challenges is especially strong); *United States v. Thompson*, 827 F.2d 1254, 1260 (9th Cir.1987)(adversarial hearing ordered to determine prosecution's motive when explanation was based on multiple reasons of residence, appearance, and race). *But see United States v. Iron Moccasin*, 878 F.2d 226, 229 (8th Cir.1989)(multiple reasons offered by prosecutor treated as three distinct explanations, with the acceptance of one removing the necessity to look at the others). We agree with the untainted approach to the question of the race-neutrality of the proffered explanation. *United States v. Briscoe*, 896 F.2d 1476, 1487 (7th Cir.), quoting *Batson v. Kentucky*, 476 U.S. at 98 and n.20, 106 S.Ct. at 1724 and n.20 ("the government's explanation must be *clear and reasonably specific* and set forth *legitimate reasons* for the challenges, *all of which* must be *related to the particular case to be tried* ") (emphasis added), *cert. denied*, 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990).

## II

In holding as a matter of law that no "race-neutral explanation" was proffered for the Government's peremptory challenge in this case (*see United States v. Bishop*, 959 F.2d at 821 n.1), we do not ignore the ultimate responsibility of the military judge to determine the existence of purposeful discrimination on the part of trial counsel. *See Hernandez v. New York*, — U.S. at —–—, 111 S.Ct. at 1868–72 (plurality opinion); 1873–74 (O'Connor and Scalia, JJ., concurring in the judgment). *See generally United States v. Curtis*, 33 MJ 101, 105 (CMA 1991), *cert. denied*, — U.S. —, 112 S.Ct. 1177, 117 L.Ed.2d 421 (1992); *cf. United States v. Moore*, 28 MJ 366 (CMA 1989). He must review the record and weigh trial counsel's credibility before he makes a factual determination regarding the presence or absence of purposeful discrimination in the panel member's rejection. Moreover, this Court will not normally set aside the military judge's findings on this factual question unless clearly erroneous. *See Hernandez v. New York*, — U.S. at —–—, 111 S.Ct. at 1868–69.

Nevertheless, if no race-neutral explanation has been offered by trial counsel, the judge never reaches the ultimate question of deliberate discrimination, and the peremptory challenge must be denied. *See United States v. Bishop*, 959 F.2d at 827. Moreover, even if a race-neutral explanation has been proffered by trial counsel for the peremptory challenge, it does not end the military judge's duties under *Batson*. *See Hernandez v. New York*, — U.S. at —, 111 S.Ct. at 1873 (O'Connor and Scalia, JJ., concurring in the judgment). The military judge must still determine whether "the asserted justification is merely a pretext for intentional race-based discrimination. *See Batson* [*v. Kentucky*,] 476 U.S., at 93, 106 S.Ct. at 1721." — U.S. at —, 111 S.Ct. at 1875.[7]

---

7. *Georgia v. McCollum*, — U.S. —, —, 112 S.Ct. 2348, 2353, 120 L.Ed.2d 33 (1992), cannot be read as permitting trial judges to decide the question of purposeful discrimination solely on

the basis that a facially race-neutral explanation has been proffered for the challenge. In that case, the Supreme Court considered a trial judge's refusal to issue an order to defense

■ In this case, we note that the record is clear that the initial and more extensive questioning of defense counsel was the basis for the military judge's additional questions and instructions to SFC Goode. More importantly, even if we misread *Batson* as precluding a race-neutral explanation which includes a partial inherently discriminatory reason, such a reason surely cannot be ignored in determining the ultimate question of purposeful discrimination. *See Hernandez v. New York,* —— U.S. at ——, 111 S.Ct. at 1866. Here, trial counsel in this case never even disavowed his Latino-macho reason for the challenge.[8] Finally, we note that the judge expressly ruled only on the race-neutrality of trial counsel's proffer and not on his true motive in lodging this peremptory challenge.[9] Such judicial inaction, at least under the circumstances of this case, constituted clear legal error.

The decision of the United States Army Court of Military Review is reversed; the findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judges COX, CRAWFORD, and GIERKE concur.

WISS, Judge (concurring):

Racial discrimination is anathema to the military justice system. It ought not—and it will not—be tolerated in any form. Courts of law may not be able to cure the personal bedevilment of racial prejudice; but courts of law can and must ensure that such human bigotry and insensitivity do not rot public and governmental institutions.

The decision of the Supreme Court of the United States in *Powers v. Ohio,* —— U.S. ——, ——, 111 S.Ct. 1364, 1368, 113 L.Ed.2d 411 (1991), makes clear that one of the interests which are trammeled by a prosecutor's race-based exercise of a peremptory challenge against a juror is that *juror's* equal-protection interest. The *defendant's* role in that regard is to assert the *juror's* right against racial discrimination, thereby vindicating the *defendant's* interest in having the proceedings free from doubt as to their fairness and integrity. —— U.S. at —— – ——, 111 S.Ct. at 1370–71.

The case now before this Court is, factually, rather unusual. Here, Sergeant First Class (SFC) Goode—a *black* court member—was peremptorily challenged; and, when called upon to explain that challenge, trial counsel responded with a racial stereotype, unfounded in the record, that was thrust at the *Hispanic* race.

In such a situation, one of two possibilities exists. First, given the difference between the race of the member (black) and the race being stereotyped (Hispanic), the prosecutor's explanation is such a non sequitur that it logically compels the conclusion, without more, that the explanation is a transparent sham that ineffectively is offered to mask the challenging party's discrimination against the member's race. As such, it is roundly condemned. *Id.; Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *See also Georgia v. McCollum,* 505 U.S. ——, 112 S.Ct.

---

counsel to articulate a race-neutral explanation for his challenge if the Government established a *prima facie* case of purposeful discrimination. —— U.S. at —— – ——, 112 S.Ct. at 2351–52. A finding of no purposeful discrimination was simply not before the Supreme Court in that case. *See also Powers v. Ohio,* —— U.S. ——, ——, 111 S.Ct. 1364, 1366, 113 L.Ed.2d 411 (1991). *Cf. Hernandez v. New York,* —— U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). The same type of situation existed in *United States v. Moore,* 28 MJ 366, 367 (CMA 1989).

8. We do not mean to suggest that a disavowal of a previously articulated impermissible racial

reason for the challenge will *per se* render the remaining explanation race neutral as delineated in Part I of this opinion.

9. The military judge did express his reservations concerning SFC Goode's cooperativeness and ability to follow his instructions. However, neither a challenge for cause nor a peremptory challenge was proffered on this basis by trial counsel. Accordingly, its relevance concerning *trial counsel's true motive* for his peremptory challenge is not readily apparent.

2348, 120 L.Ed.2d 33 (1992) (*Batson* applies equally to defendants and prosecutors).

Second, although the explanation appears to offer a non sequitur, in fact there *is* some relationship between the member and the race that the explanation denigrates. Here, while it is unclear whether SFC Goode's black race troubled the prosecutor, it is clear that trial counsel was disturbed by the fact that SFC Goode—whatever his race—was raised in an Hispanic environment and subject to Hispanic culture. Trial counsel's anxiety arose from the unfounded application of his personally held stereotype of how Latin men think about their relationship with women and sex. In other words, trial counsel challenged a black member because of his expressed desire to exclude Hispanic men from serving on the panel.

Notwithstanding the unusual factual scenario, the fact remains that a race-based stereotype, that had no foundation in the record, was the saber that cut SFC Goode loose from his position on the court—a position that was his right, his privilege, and his duty to serve. One simply cannot read the majority opinion in *Powers v. Ohio, supra,* without being struck with the power of its starkly simple underlying principle: Racial discrimination has no role in a justice system. As Justice Kennedy stated with ringing clarity:

> It is suggested that no particular stigma or dishonor results if a prosecutor uses the raw fact of skin color to determine the objectivity or qualifications of a juror. We do not believe a victim of the classification would endorse this view; the assumption that no stigma or dishonor attaches contravenes accepted equal protection principles. *Race cannot be a proxy for determining juror bias or*

*competence.* "A person's race simply 'is unrelated to his fitness as a juror.'" *Batson, supra,* 476 U.S. at 87, 106 S.Ct., at 1718 (quoting *Thiel v. Southern Pacific Co., supra,* 328 U.S. [217] at 227, 66 S.Ct. [984] at 989 [90 L.Ed. 1181 (1946)] (Frankfurter, J., dissenting)). *We may not accept as a defense to racial discrimination the very stereotype the law condemns.*

—— U.S. at ——, 111 S.Ct. at 1370 (emphasis added).

Here, race was a proxy for measuring SFC Goode's impartiality and competence to judge this case. If trial counsel had any reason to suspect that, as a result of some aspect of his background, SFC Goode might hold certain views and biases that would make him something less than an objective trier of the facts and sentencer, then trial counsel should have probed *SFC Goode* to uncover these *personal* biases. *Then,* trial counsel might be in a position to "articulate a neutral explanation *related to the particular case to be tried,*" see *Batson v. Kentucky,* 476 U.S. at 98, 106 S.Ct. at 1724 (emphasis added)—and, indeed, he might even be able to assert a challenge for cause.

As Justice Kennedy admonished, however: "We may not accept as a defense to racial discrimination the very stereotype the law condemns." —— U.S. at ——, 111 S.Ct. at 1370. The prosecutor in this case erred—in both a constitutional and a human sense—when he relied upon his own racial stereotypes—whether those stereotypes were of SFC Goode's own race or were of another race that somehow relates to SFC Goode.