**UNITED STATES**

**v.**

**Christopher B. THOMAS, 376 96 5808 Private (E–1), U.S. Marine Corps.**

**NMCM 92 00118.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 19 July 1991.

Decided 10 June 1994.

---

Capt Hagen Frank, USMC, Appellate Defense Counsel.

Gary R. Meyers, Civilian Defense Counsel.

John A. Wickham, Civilian Defense Counsel.

Capt A. Diaz, USMC, Appellate Government Counsel.

Before REED, Senior Judge, and LAWRENCE and BARNES, JJ.

LAWRENCE,[1] Judge:

The appellant was tried by a general court-martial composed of officer and enlisted members. Contrary to his pleas, he was convicted of conspiracy to steal and forge checks, larceny of a military identification card and blank checks, forgery of and uttering forged checks, concealing stolen property, and communicating a threat, in violation of Articles 81, 121, 123, and 134, Uniform

---

1. Judge Lawrence authored this opinion prior to his retirement on 1 June 1994.

Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 921, 923, 934. The members sentenced him to confinement for 8 years, total forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority approved the findings and sentence without modification. The record is now before us on review pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c).

The appellant assigns five errors which allegedly result in material prejudice to his substantial rights. We conclude that none has merit, however, the one involving an application of the principles of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), merits discussion.[2]

At trial, the trial counsel exercised his one peremptory challenge to remove the one prospective black member from the panel. Trial counsel gave two reasons for challenging the member, the first of which was based on the prospective member having previously sat as a member in a court-martial that acquitted the accused. The military judge found that the reasons were race-neutral and that the challenge was not motivated by racial discrimination. The appellant asserts that the military judge misapplied the law in ruling on the peremptory challenge and that trial counsel's stated reasons for exercising the challenge do not satisfy the mandate of *Batson* and its progeny, in part, because other prospective members participated in courts-martial at which the accused was acquitted. We conclude that the military judge correctly applied the law and that his finding that the race-neutral reasons expressed by trial counsel were not a pretext for intentional or purposeful racial discrimination is not clearly erroneous based on the evidence of record. Thus, we conclude that the military judge committed no prejudicial error in permitting the peremptory challenge.

## FACTS

Prior to beginning voir dire, the members' pretrial questionnaires were attached to the record as an appellate exhibit. Record at 16. The panel included eight members evenly split between officers and enlisted persons. The military judge began voir dire by asking a series of questions to the panel as a whole. He remarked that some of the members had sat on courts-martial before, an observation undoubtedly made from his examination of the questionnaires.

At the conclusion of voir dire of the panel as a whole, the military judge excused the members. A discussion ensued regarding members who would be called back for individual questioning. Regarding new subjects for inquiry, the defense counsel said that he would "like to question the members concerning the nature of the courts-martial in which they convened or either sat as members and what the outcomes of those were...." Record at 41. The military judge asked the trial counsel if he objected to asking the members who had sat on prior courts-martial "how the courts-martial came out, i.e., guilty or not guilty?" Record at 42. The trial counsel had no objection.

The military judge conducted the initial individual voir dire, often referring directly to the member's questionnaire. When questioned in this manner, Captain (Cpt) [B] indicated that he had sat as President on a court-martial involving attempted larceny. When asked by the military judge whether he should inquire into the result, both counsel said they knew the result. Cpt [B] also disclosed his participation as a member in another court-martial in which the accused had been convicted, however, he could not remember the sentence. Record at 49–50.

After individual voir dire of other members, the panel returned for additional collective voir dire. Lieutenant Colonel (LtCol) [F] said that he had sat on two special courts-martial "close to twenty years ago." Record at 56. Both accused were convicted. He thought that one received a sentence including confinement for 6 months, whereas

---

**2.** I. THE ACCUSED WAS DENIED DUE PROCESS OF LAW WHEN SEVERAL ERRORS CUMULATED TO DENY THE ACCUSED A FAIR TRIAL UNDER THE FIFTH AND SIXTH AMENDMENT.

D. The Military Judge Erred to the Substantial Prejudice of the Accused by Failing to Properly Apply *Batson v. Kentucky,* when Overruling Defense Counsel's Objection to Trial Counsel's Preemptory Challenge Against a Court Member of the Accused's Same Race.

the other received a reduction and a "fine." *Id.* LtCol [O] had convened five special courts-martial at which the accused was convicted. He had sat as a summary court-martial more than once, and at least one accused had been found not guilty. Major [H] had also sat as a summary court-martial at which at least one accused had been acquitted. Gunnery Sergeant [H] said that he had sat as a member on one court-martial, and the accused "was found innocent." Record at 58. Just prior to the conclusion of this collective voir dire, LtCol F said that he remembered that he had been a member of an additional special court-martial, and the accused was acquitted in that case.

In an Article 39(a), UCMJ, session following the members' excusal, the defense successfully challenged Cpt [B] for cause. When asked if he wished to exercise a peremptory challenge, the trial counsel responded:

Yes, sir, and I hesitate to make this challenge because I would like to note that the accused is black and Gunnery Sergeant [H] is the only black member on the panel; however, he testified along with Lieutenant Colonel [F] that he had been on a panel that acquitted a Marine—as a matter of fact he used the words, "we found him innocent," and he gave a bit of a smile when he said that, for whatever reason, and I would like to use my peremptory challenge on Gunnery Sergeant [H] for those reasons.

Record at 64.

When asked if he would like to be heard, defense counsel responded that he did "only because there were a number of other members as well who stated that they had served as members of courts-martial whereby an individual had been acquitted," record at 65, noting specifically LtCol [F] and [O]. Defense counsel continued:

Therefore, sir, it is believed that that reason, in and of itself, is not satisfactory; along with the fact that he used the word "innocent." Innocent vice not guilty, sir, is not a big deal. It just depends on the vocabulary of that individual and his choice of that word should in no way prohibit him

from sitting as a member on this court-martial.

Record at 65–66.

The military judge noted that trial counsel had but one peremptory challenge, opining that if he had more he might well challenge any member who had participated in acquitting an accused. He continued:

Your comment and observation concerning the fact of somebody acquitting, or indeed the fact of somebody smiling, not being a good reason to get rid of somebody on a court-martial may or may not be true.... However, one doesn't have to have a good reason for a peremptory challenge, one only has to have a non-racial reason. It can be a bad non-racial reason. So even if you are correct and that's a bad reason to get rid of him, I've got to decide whether, despite being a bad reason, it's a non-racial reason, and that is the only inquiry that the *Batson v. Kentucky* case requires me to make at this point.

Presumably one could exercise a peremptory challenge because he doesn't like the way someone did not smile at him or because he likes—did not like the way he smiled at the opposition team rather than at him, or because in a different context he comes into Court wearing a Philadelphia Eagles T-shirt and he's a Giant's fan. Whatever the reason is, it doesn't have to be a good one to exercise a peremptory challenge. That's what peremptory challenges are all about....

In any event, I am satisfied that the reason that the trial counsel has given, whether a good or a bad one, is indeed a non-racial one and the peremptory challenge that is being exercised against the member for (sic) reasons having nothing to do with his race as a black. Accordingly, if the defense was intending to object to the exercise of the peremptory challenge, that objection is overruled, and if we must make a finding, we have made a finding that the peremptory challenge was not racially motivated for the reasons just stated on the record.

Record at 66–67.

### LAW

In *United States v. Santiago–Davila*, 26 M.J. 380 (C.M.A.1988), the Court of Military

Appeals held that *Batson* applies to courts-martial. *Batson* set out "a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal protection Clause." *Hernandez v. New York*, 500 U.S. 352, 358, 111 S.Ct. 1859, 1865, 114 L.Ed.2d 395 (1991) (citing *Batson*, 476 U.S. at 96–98, 106 S.Ct. at 1723–24). The first step requires a defendant to make a *prima facie* showing that the prosecutor exercised a peremptory challenge on the basis of race. *Id.* at 358–60, 111 S.Ct. at 1866. In *United States v. Moore*, 28 M.J. 366 (C.M.A.1989), the Court of Military Appeals obviated this step for courts-martial by adopting a *per se* rule which states that "every peremptory challenge by the Government of a member of the accused's race, upon objection, must be explained by trial counsel." *Moore* at 368.

■ Because the trial counsel in this case exercised his one peremptory challenge against a court member of the accused's race, he was then required to give a "race-neutral" explanation for his challenge.[3] The Supreme Court explained in *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), that:

> A neutral explanation ... means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

*Id.* at 358–60, 111 S.Ct. at 1866. In general, the reason or reasons expressed by the trial counsel must "relate to the particular case to be tried", *Batson*, 476 U.S. at 98, 106 S.Ct. at 1723–24; and constitute "a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenge[ ]." *Id.* at n. 20 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)).

■ The requirement that the explanation relate to the particular case and that it be clear and reasonably specific does not mean that it must meet the requirements for a challenge for cause. A trial lawyer's stated reason for exercising a peremptory challenge may include "intuitive assumptions that are not fairly quantifiable." *Williams v. Chrans*, 957 F.2d 487, 490 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992) (quoting *United States v. Williams*, 934 F.2d 847, 850 (7th Cir.1991); *see United States v. Bentley–Smith*, 2 F.3d 1368, 1374 at fn. 6 (5th Cir.1993) (citing federal cases upholding peremptory challenges based on "intuition and other objectively unverifiable considerations"). As Justice O'Connor has written:

> Indeed, often a reason for it cannot be stated, for a trial lawyer's judgments about a juror's sympathies are sometimes based on experienced hunches and educated guesses, derived from a juror's responses at voir dire or a juror's "bare looks and gestures." That a trial lawyer's instinctive assessment of a juror's predisposition cannot meet the high standards of a challenge for cause does not mean that the lawyer's instinct is erroneous. Our belief that experienced lawyers will often correctly intuit which jurors are likely to be the least sympathetic, and our understanding that the lawyer will often be unable to explain the intuition, are the very reason we cherish the peremptory challenge.

*J.E.B. v. Alabama*, —— U.S. ——, ——, 114 S.Ct. 1419, 1431, 128 L.Ed.2d 89 (1994) (O'Connor, J., concurring).

■ If the trial counsel's explanation is race-neutral, the accused continues to bear the "ultimate burden of persuasion" in showing intentional discrimination. *Batson*, 476 U.S. at 94 n. 18, 106 S.Ct. at 1721 n. 18 (citing *Burdine*, 450 U.S. at 252–56, 101 S.Ct. at 1093–95); *United States v. Greene*, 36 M.J. 274, 278 n. 2 (C.M.A.1993). The question essentially is whether the trial counsel's race-neutral explanation is credible based on the

---

3. In this case, as in *Hernandez*, the trial counsel defended his use of his peremptory challenge "without any prompting or inquiry from the trial court." *Hernandez*, 500 U.S. at 358–60, 111 S.Ct. at 1866. Thereafter, the accused objected to the challenge. Under *Moore*, the explanation was required absent an initial objection by the accused or a *prima facie* showing of unlawful discrimination.

totality of all relevant facts and circumstances or whether it is a pretext[4] for intentional or purposeful discrimination. *See J.E.B.*, —— U.S. at ——, 114 S.Ct. at 1429–30; *Hernandez*, 500 U.S. at 362–64, 111 S.Ct. at 1868. In most cases, this determination will turn on the military judge's evaluation of trial counsel's credibility, that is, "whether his race-neutral explanation for a peremptory challenge should be believed." *Id.* at 1869. The Supreme Court has acknowledged that "there will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." *Id.*

■ In deciding whether trial counsel's explanation is pretextual, the military judge is not limited to trial counsel's verbal expressions alone. The military judge must "review the record and weigh trial counsel's credibility before he makes a factual determination regarding the presence or absence of purposeful discrimination in the panel member's rejection." *Greene* at 281; *see Batson*, 476 U.S. at 96–97, 106 S.Ct. at 1722–23. He may even consider matters outside the record that are common knowledge in the area of trial. *See Hernandez*, 500 U.S. at 362–64, 111 S.Ct. at 1868.

■ The military judge has the ultimate duty of determining " 'if the [accused] has established purposeful discrimination.' " *Hernandez* at 362–64, 111 S.Ct. at 1868 (quoting *Batson*, 476 U.S. at 98, 106 S.Ct. at 1724); *Greene* at 278 n. 2. Appellate courts accord great deference to a military judge's determination that the peremptory challenge was not based on intentional or purposeful racial discrimination. *Id.* This determination is "a pure issue of fact," *Id.* at 364–66, 111 S.Ct. at 1869, accordingly, we will set it aside on review pursuant to Article 66(c), UCMJ, only if it is clearly erroneous. *Id.* at 368–69, 111 S.Ct. at 1871; *Greene* at 281.

## ANALYSIS

■ Trial counsel stated that he challenged Gunnery Sergeant [H] based on his (1) prior history of acquitting an accused and (2) personal demeanor as evidenced by "a bit of a smile" the member gave when disclosing that his prior court-martial acquitted the accused. Both reasons are race-neutral. At that point in the trial, to prevent trial counsel's exercise of the peremptory challenge, the appellant was required to show that trial counsel's explanation was a pretext for intentional or purposeful discrimination. Trial defense counsel's attempt to satisfy his burden of persuasion was limited solely to argument, and that argument addressed only the first of trial counsel's reasons for challenging GySgt [H].

The military judge expressed his satisfaction "that the reason that the trial counsel has given, whether a good one or a bad one, is indeed a non-racial one and the peremptory challenge that is being exercised against the member [is] for reasons having nothing to do with his race as a black." Record at 66. The appellant contends that this statement demonstrates that the military judge incorrectly applied the law because he did not believe it necessary to inquire whether the expressed reason for the challenge is a good or a bad one. We disagree. It is clear from the military judge's earlier comments that when he referred to good and bad reasons he meant those that are convincing and grounded in logic vice those that are based on intuition, conjecture, or simply an undefinable uneasiness about the member's predisposition against counsel's side of the case. The military judge's statement as a whole indicates that he determined that the reasons stated by trial counsel were race-neutral and that the challenge was not exercised on the basis of the member's race, that is, the race-neutral reasons were not pretextual.

---

4. The Supreme Court has said that even peremptory challenges "based on characteristics that are disproportionately associated with one gender could be appropriate, absent a showing of pretext." *J.E.B.*, —— U.S. at ——, 114 S.Ct. at 1429–30. As an example, the Court states that "challenging all persons who have had military experience would disproportionately affect men at this time, while challenging all persons employed as nurses would disproportionately affect women. Without a showing of pretext, however, these challenges may well not be unconstitutional, since they are not gender- or race-based." *Id.* at —— n. 16, 114 S.Ct. at 1429–30 n. 16 (citing *Hernandez* ).

In reviewing this factual determination, we note first that, unlike this Court, the military judge observed the demeanor of trial counsel before concluding that trial counsel's race-neutral explanation for his challenge was credible. In addition, the record shows that Gunnery Sergeant [H] had sat as a member of a court-martial at which the accused was acquitted. The record does not indicate whether the member in fact smiled when he made this disclosure;[5] certainly the military judge did not indicate that this explanation was without any basis in fact. Trial defense counsel did not contest the accuracy of trial counsel's observation in argument or by introducing evidence to show that it was untrue. We conclude that the military judge found that both bases for the challenge were supported in fact.

■ Defense counsel objected that other members had sat on previous courts-martial that had acquitted the accused. When multiple reasons form the basis for a preemptory challenge, the fact that one reason might apply equally to another member does not alone demonstrate that the reasons are pretextual. *See Dunham v. Frank's Nursery & Crafts, Inc.,* 967 F.2d 1121 (7th Cir.1992); *Moore v. Keller Industries, Inc.,* 948 F.2d 199 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992). As to the two members who acquitted an accused while serving as a summary court-martial, a trial counsel could reasonably conclude that sitting alone as a summary court-martial bears little relationship to serving and deliberating as part of a group in a special or general court-martial. Although LtCol [F] and GySgt [H] had a more similar background in regards to court-martial acquittals as both had participated as members in special courts-martial resulting in acquittals, LtCol [F] had served on two courts-martial that resulted in conviction—one resulted in a sentence that included the maximum authorized sentence to confinement. GySgt [H] had but one court-martial experience as a member, and that case resulted in an acquittal. However, from these facts, trial counsel could reasonably conclude that

LtCol [F] had no qualms about convicting an accused and would seriously entertain voting for the maximum sentence. He could not be equally sure about GySgt [H].

■ Additionally, *Hernandez* makes clear that in deciding whether trial counsel's race-neutral explanation for his challenge is pretextual the military judge may consider the entire record; including the member's questionnaires. *See é.g. United States v. Garrison,* 849 F.2d 103, 105 (4th Cir.), *cert. denied,* 488 U.S. 996, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988) (prosecution decisions concerning use of peremptory challenges necessarily based in part on jurors' questionnaires).

LtCol [F]'s questionnaire shows that he had been in the Marine Corps for 23 years as of the date of trial. He began his career in Vietnam with the First Marine Division, serving as a rifle platoon commander, the executive officer of a rifle company, and the assistant operations officer of an infantry battalion. The last 10 years of his career were spent in intelligence billets. An experienced trial counsel probably would view LtCol [F] as close to an ideal member. Officers with extensive combat service presumably possess a full understanding of the role of unit cohesion and morale in battle. Those who have served in a direct leadership capacity in a platoon or company undoubtedly comprehend the damaging effects of a thief within the unit who steals from his fellows. Thus, the questionnaire shows that an unbiased trial counsel would have a good reason to desire that LtCol [F] continue to serve as a court member.

GySgt [H] had 16 years of service, the last 10 years of which was served in radio, air traffic control, and communications assignments. It appears that he had not served in combat. Significantly, on the questionnaire, GySgt [H] wrote that he had served on two courts-martial in "86/88." During voir dire, he disclosed but one at which the accused was acquitted. This discrepancy was not mentioned at trial. Certainly, a trial counsel who was concerned about a member having sat on a court-martial that acquitted the ac-

---

5. When trial counsel makes such an assertion, the better practice is that the military judge will make a finding on the record whether the assertion is accurate or not.

cused would want to know whether in fact the member sat on two courts-martial vice one and what the result of the second was. It is unclear whether the military judge or counsel noted this discrepancy. At any rate, even considering this anomaly, an unbiased trial counsel could easily conclude that GySgt [H] was not as desirable a member for the prosecution as was LtCol [F], a conclusion that lends support for the military judge's finding that trial counsel's explanation for challenging GySgt [H] was not a pretext to cover impermissible discrimination.

Thus, we conclude that as to trial counsel's first reason for exercising his peremptory challenge against GySgt [H] the military judge's factual finding of non-discriminatory intent or purpose is supported by evidence of record and is not clearly erroneous. Arguably, if multiple reasons are proffered, none of which is based on a racial stereotype and each is race-neutral, and one is found to be free of an intent to discriminate, there is no requirement to examine the other or others. *See United States v. Iron Moccasin*, 878 F.2d 226 (8th Cir.1989). The Court of Military Appeals seemingly rejected this approach in *Greene*, however, accordingly, we must examine the second proffered reason for exercise of the challenge, GySgt [H]'s alleged "bit of a smile" when he revealed that he had sat on a court that tried the accused and "found him innocent."

Numerous federal decisions involve a prosecutor's explanation for his peremptory challenge that is based on the juror's demeanor in court. *Moore*, (juror non-responsive to *voire dire* questions); *Bentley–Smith*, 2 F.3d at 1382 nn. 2 & 3 (Johnson, J., dissenting) (citing numerous cases); *Dunham*, (juror looking at defendant); *Reynolds v. Benefield*, 931 F.2d 506 (8th Cir.), *cert. denied*, 501 U.S. 1204, 111 S.Ct. 2795, 115 L.Ed.2d 969 (1991) (body language). They acknowledge, as does Justice O'Connor concurring in *J.E.B.*, that a look or gesture is often the cue for the lawyer's intuition that the prospective mem-

ber is not well-disposed towards the lawyer's side of the case. The cue may not be universally persuasive—indeed, another lawyer might interpret it entirely differently. Nonetheless, the peremptory challenge exists to permit a party to challenge a member for no stated reason whatsoever. So long as the reason is race neutral and is not motivated by an intent to discriminate, the military judge is without authority to prevent the exercise of the challenge.

In this case, the military judge found that trial counsel's stated uneasiness regarding the member's smile constituted a race-neutral reason for challenging the member. He further found that the motivation behind the challenge was unrelated to the member's race. We find nothing in the record to dispute the military judge's finding, thus, there is no basis for concluding that it is clearly erroneous.

### REMAINING ASSIGNMENTS OF ERROR

In assignment of error I.A.,[6] appellant alleges error in trial counsel's impeachment of a defense witness through use of former testimony of a co-conspirator of the appellant. The cross-examination was intended to challenge the basis of the witness' testimony that appellant was not involved with the charged offenses. We conclude that the cross-examination was offered to impeach the witness' credibility, not for its truth. Importantly, trial defense counsel did not object to this line of inquiry. We conclude that this issue is waived and that no plain error occurred. *See United States v. Fisher*, 21 M.J. 327 (C.M.A.1986); Mil.R.Evid. 103(a), (d).

For a similar reason, we reject the appellant's contention in assignment of error I.B.[7] that prejudicial error occurred when trial counsel sought to impeach another defense witness by soliciting the fact from the witness that he had been convicted of wrong-

---

6. A. Trial Counsel Committed Plain Error by Improperly Impeaching Defense Witness Cooke With Hearsay Former Testimony of Co-conspiracy Henry that Implicated the Accused in the Larceny and Forgery Alleged under Charges I, II, and III.

7. B. Trial Counsel Committed Plain Error by Improperly Impeaching Defense Witness Pvt. Parvi With a Prior Conviction Without Establishing A Foundation Qualifying it under M.R.E. 609(a).

ful appropriation. The appellant asserts that such an offense is not sufficiently serious to fall under Mil.R.Evid. 609(a)(1) and does not bear on truthfulness under Mil.R.Evid. 609(a)(2), thus it does not qualify for admission under the rule. Trial defense counsel did not lodge an objection, however, thus the issue is waived absent plain error which we find to be absent.

Assignments of error I.C. and I.E.[8] are without merit.

## ACTION

The findings and sentence, as approved on review below, are affirmed.

Senior Judge REED and Judge BARNES concur.

---

8. C. The Military Judge Committed Plain By Improperly Commenting to the Members the Fact That, Prior to Trial; the Accused Had Asserted His Right To Remain Silent and His Right to Counsel. The Accused's Rights were also Violated Because Interrogation Continued After These Rights Were Invoked.

E. The Military Judge Materially Prejudiced the Substantial Rights of the Accused by Removing Key Evidence From the Members During Deliberations and Immediately Prior to Their Revoting on the Findings.