UNITED STATES

v.

**Technical Sergeant Rogelio P.
CLEMENTE, FR525–13–7060
United States Air Force.**

ACM 32360.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 2 Aug. 1996.

Decided 8 May 1997.

Appellate Counsel for Appellant: Colonel David W. Madsen, Lieutenant Colonel Kim L. Sheffield, and Captain Margo Stone Newton.

Appellate Counsel for the United States: Lieutenant Colonel Michael J. Breslin and Major LeEllen Coacher.

Before PEARSON, MORGAN, C.H., II, and MORGAN, J.H., Appellate Military Judges.

## OPINION OF THE COURT

MORGAN, J.H., Judge:

Appellant was convicted in accordance with his pleas of six specifications of attempted larceny, thirteen specifications of larceny, and one specification of stealing and opening mail. Officer court members sentenced him to a bad-conduct discharge, 12 months confinement, and reduction to E–1. Finding merit to one of the five assignments of error raised by appellant, we modify the findings and reassess the sentence.

### Assigned Errors

Appellant's assignments of error are: 1) the military judge erred by denying a defense motion to dismiss various charges based on multiplicity; 2) the military judge erred in ruling that trial counsel had stated a race-neutral reason for using his peremptory challenge on the only Filipino court member because the judge did not determine whether the asserted justification was merely a pretext for intentional race-based discrimination; 3) the military judge abused his discretion by admitting appellant's Unfavorable Information File (UIF) during sentencing over defense objection; 4) the convening authority abused his discretion in denying appellant's petition to waive automatic forfeitures under Article 58b, UCMJ; and 5) the application of Articles 57(a) and 58b, UCMJ, 10 U.S.C. §§ 857(a), 858b, violates the *Ex Post Facto* Clause of the Constitution with respect to appellant.

### Factual Background

In late March and early April, 1996, while sorting mail for distribution as part of his duties at Hickam Air Force Base, Hawaii, appellant took and opened four envelopes addressed to military members. From these envelopes, he obtained the MasterCard and its Personal Identification Number (PIN) of a captain and the American Express Card and its PIN of a senior master sergeant.

Appellant used the stolen cards and PINs to steal $2600 and to attempt to steal another $1700. He made a total of eight trips to various automatic teller machines (ATM).

During six of the eight ATM visits, he made or attempted to make multiple withdrawals from the machine during the same visit without even removing the card from the ATM. Most of these multiple withdrawals took under 90 seconds with one taking less than a minute.

### Multiplicity of Offenses During One Visit to an ATM

■ Appellant moved at trial to dismiss as multiplicious all but one specification for each separate visit appellant made to an ATM. The government charged each separate ATM transaction made by appellant as a separate larceny or attempt. So, for example, during one visit to an ATM machine on April 13, 1996, appellant was charged with and convicted of four specifications of stealing $200 rather than one specification of stealing $800 during that ATM visit. Appellant asserts that the government's charging methodology violates the guidance of the MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.) (MCM) that "what is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." R.C.M. 307(c)(4) (Discussion). Appellant contends that various specifications based on multiple transactions during a single ATM visit should be either dismissed or merged into a single specification.

In ruling against appellant at trial, the military judge stated:

19. Notwithstanding the fact that in reference to the various specifications that are the subject of this motion to dismiss, two, three, and sometimes four transactions involving either successful withdrawals of certain amounts of cash or unsuccessful attempts at withdrawals of cash or some combination thereof took place at the same place and location, and occurred or were completed within minutes of each other, using the same ATM or cash advance cards and without even withdrawing the ATM card or cash advance card from the ATM machines between committing several of the transactions which were committed within minutes of each other, I find that each individual withdrawal or attempted withdrawal, utilizing either of these cards as described above, constituted a separate and distinct act or offense, and therefore none are multiplicious with any other.

20. I find that each initial placement of the ATM card into the machine and the initial act of withdrawal or attempted withdrawal, as well as each subsequent affirmative response by the accused to the questions, "Do you want to make another transaction?" followed by his further act of withdrawal of an additional amount of cash, or attempted withdrawal of additional cash, required the formulation of another specific intent to commit a further act of theft on the accused's part, and that, therefore, each separate act of withdrawal or attempted withdrawal was a separate and distinct offense chargeable under separate and distinct specifications. The motion is therefore, denied.

■ Appellant asserts that both the MCM guidance and case law support his position on the multiplicity of these charges. MCM, Part IV, ¶ 46c(1)(h)(ii), states "When a larceny of several articles is committed at substantially the same time and place, it is a single larceny even though the articles belong to different persons." It further states that if a thief "goes into a room and takes property belonging to various persons, there is but one larceny, which should be alleged in but one specification." The Court of Military Appeals (now the Court of Appeals for the Armed Forces) has held that 'when an accused found an ATM card in an ATM machine and used the card to steal $500 from that ATM, theft of the card and the money were multiplicious. The Court ordered the separate specifications consolidated. *United States v. Martin*, 36 M.J. 315 (C.M.A.1993). It is well understood that multiple charging of the theft of several items taken from the same place at the same time is multiplicious and must be consolidated into one specification. *See, e.g., United States. v. Roberson*, 43 M.J. 732, 733 n. 3 (A.F.Ct.Crim.App.1995).

Since the decision in *United States v. Teters*, 37 M.J. 370 (C.M.A.1993), we have frequently reviewed the question of whether one act or transaction could be separately

charged under more than one punitive article of the UCMJ. The cases dealt with such issues as whether larceny and forgery or rape and adultery could both be charged based on the same factual occurrence. In the present case, we are not faced with that issue. The question is whether the closely related acts of removing money several times from an ATM which occurred at the same place and time, during a single ATM visit, can be charged as multiple thefts under Article 121, UCMJ. In the case of the ATM transactions which failed to produce any money, we ask if multiple attempted thefts under Article 80, UCMJ, may be charged for multiple transactions during the same ATM visit. Based on MCM guidance and case law precedent, the answer to this question under the facts of this case is no. *Martin, supra;* MCM, Part IV, ¶ 46c(1)(h)(ii).

We find the military judge erred in denying appellant's multiplicity motion at trial. The military judge found that each time appellant decided to make another transaction by pushing the correct button on the ATM he formed a separate specific intent. Even if we assume, without deciding, that a "separate intent" was formed, appellant cannot be charged with a separate offense each time he performed a transaction during a single visit to an ATM. We conclude that each time appellant went to an ATM and made multiple withdrawals, only one larceny conviction can be sustained for the total of those withdrawals. Likewise, each time appellant made multiple attempted withdrawals during the same visit to an ATM, only one attempted larceny conviction can stand for the combined total of those attempts.

▪ However, we disagree with appellant that the attempts which accompanied a successful larceny must be dismissed since they merged into the larceny. Those attempts which accompanied a successful withdrawal of cash stand alone as separate offenses and are not multiplicious with the completed larceny. The attempts involved the different act of trying to obtain additional money, which, because they failed through no fault of appellant, cannot be charged as a larceny. *United States v. Foster,* 40 M.J. 140, 143 (C.M.A.1994).

### Whether Multiplicity Waived

▪ Even though appellant raised the multiplicity issues at trial, the government submits that appellant waived appellate consideration of the issue by his unconditional guilty pleas to all the charges and specifications. They cite *United States v. Lloyd,* 46 M.J. 19 (1997), in support of this position. We disagree that *Lloyd* precludes our review in this case. While Lloyd did not raise multiplicity at trial, appellant did. Moreover, the Court of Appeals for the Armed Forces specifically held "that appellate consideration of multiplicity claims is effectively waived by unconditional guilty pleas, except where the record shows that the challenged offenses are 'facially duplicative.'" *Lloyd,* 46 M.J. at 20 (citing *United States v. Broce,* 488 U.S. 563, 575, 109 S.Ct. 757, 765–66, 102 L.Ed.2d 927 (1989)).

In both *Lloyd* and *Broce,* the accused not only pled guilty but failed to raise the issue of multiplicity or double jeopardy at all during trial. We need not decide whether that distinction preserved the issue for appellant, because we find that all thefts which occurred during a single visit to an ATM were facially duplicative. Likewise, all attempted thefts during a single visit were factually the same attempt. We note that the government even used identical language to charge the individual withdrawals or attempted withdrawals during a single visit. Only by carefully reading the stipulation of fact and the guilty plea inquiry can one determine to which offense the government referred. While this charging methodology is not controlling, it gives strong support to the proposition that each visit could not be considered the basis for multiple larceny or multiple attempted larceny specifications. Since the challenged offenses in appellant's case were "facially duplicative," we find that appellant did not waive appellate review of the multiplicity issues by his pleas of guilty. *Lloyd,* 46 M.J. at 20.

### Race–Neutral Basis for Peremptory Challenge

Trial counsel used his peremptory challenge to remove the only Filipino member

from the court panel. Appellant is Filipino. Based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), trial defense counsel requested that the military judge require trial counsel to state a race-neutral basis for the challenge. Trial counsel stated that he had noticed on the member's court martial data sheet that the member had indicated he had planned to be on leave on the day of trial. Trial counsel stated he felt uncomfortable with a member who might be irritated with having to cancel his leave to serve on the court. Neither the judge nor either counsel had asked this member about his planned leave, and the member had joined all other members in stating there was nothing which would interfere with his ability to participate fairly as a court member. Trial counsel explained that he did not want to bring the subject up during his voir dire of the member because it might upset the member. The judge found that trial counsel had stated a race-neutral reason. Although defense counsel stated he disagreed with the judge's ruling, he said he would accept it and was ready "to go ahead and continue" at that point. He did not request the military judge conduct any additional inquiry of the member or ask to conduct one himself.

▮ The Court of Military Appeals (now the Court of Appeals for the Armed Forces) applied *Batson* to the military in *United States v. Santiago–Davila*, 26 M.J. 380 (C.M.A.1988). The Court has also established a *per se* rule for *Batson* challenges. "[E]very peremptory challenge by the Government of a member of the accused's race, upon objection, must be explained by trial counsel." *United States v. Moore*, 28 M.J. 366, 368 (C.M.A.1989). Trial counsel may not simply say his reason for the challenge is nondiscriminatory but must state a specific race-neutral reason for the challenge. However, the stated reason need not rise to the level justifying a challenge for cause. *Moore*, 28 M.J. at 369. A race-neutral explanation means an explanation based on something other than the race of the member. The facial validity of trial counsel's explanation is critical. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed-race neutral." *Hernandez v. New York*, 500 U.S.

352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991); *United States v. Greene*, 36 M.J. 274, 278 (C.M.A.1993); *United States v. Woods*, 39 M.J. 1074, 1076 (A.C.M.R.), *pet. denied*, 42 M.J. 20 (1994).

▮ It is the responsibility of the military judge to determine if the trial counsel's explanation is race-neutral and not a mere pretext. *Batson*, 476 U.S. at 93, 106 S.Ct. at 1721; *Greene*, 36 M.J. at 281. Although the military's *per se* rule requires the trial counsel to state a race-neutral reason, the burden is still on the accused to establish purposeful discrimination, and the military judge must determine if the accused has carried that burden. *Batson*, 476 U.S. at 97–98, 106 S.Ct. at 1723–24; *Greene*, 36 M.J. at 278 n. 2. The ultimate burden of persuasion regarding possible racial motivation behind a peremptory challenge rested with appellant and never shifted to the government. *Purkett v. Elem*, 514 U.S. 765, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). Trial defense counsel did not ask the military judge to recall the member for additional voir dire and "accepted" that trial counsel's explanation would be enough to pass the challenge. The military judge had no duty to independently question the member further. The only requirement was that trial counsel's explanation be race-neutral and not pretextual. *Moore*, 28 M.J. at 369.

▮ We review the military judge's determination of whether trial counsel based his peremptory challenge on race for abuse of discretion. This is a factual determination which we will not disturb unless it is clearly erroneous. *Hernandez* 500 U.S. at 364–65, 111 S.Ct. at 1863–69; *Greene*, 36 M.J. at 281. We share our superior court's confidence that military judges are able to deal with this issue capably when it arises. *Santiago–Davila*, 26 M.J. at 392. The military judge did not abuse his discretion in finding that the trial counsel's explanation was race-neutral based on the record of trial.

*Admissibility of UIF Documents*

▮ Appellant claims that the military judge erred by admitting, over defense objection, appellant's UIF which contained a

letter of reprimand (LOR) for child neglect and an LOR for spouse abuse. Appellant's commander issued both of the LORs in September 1995, almost one year before appellant's trial. The child neglect involved appellant leaving his three minor children unattended. The spouse abuse is not specific but appears to deal with a simple assault. At trial, defense counsel objected on the grounds that the documents were not relevant and that their prejudicial effect outweighed their probative value.

The military judge found that the UIF documents were maintained in accordance with departmental regulations to reflect past military conduct and history of appellant. R.C.M. 1001(b)(2). The judge addressed appellant's objection under Military Rule Evidence 403 as to the prejudicial nature of the documents by finding that "the prejudicial effect would not be so great as defense is arguing." Appellant claims that the subject matter of the LORs had the potential to unduly arouse the members' hostility or prejudice against him.

■ We review the judge's decision to admit or exclude sentencing evidence under a clear abuse of discretion standard. *United States v. Sullivan*, 42 M.J. 360, 363 (1995); *United States v. Murphy*, 26 M.J. 454, 457 (C.M.A.1988). Appellant contends that the LORs in his case were of a similar prejudicial nature as those found inadmissible in *United States v. Zakaria*, 38 M.J. 280 (C.M.A.1993). We disagree. In *Zakaria*, appellant was convicted of wrongful appropriation, larceny, and for presenting a fraudulent claim. These offenses are similar in nature to appellant's offenses. However, the LORs in *Zakaria* were for committing indecent acts with four minor girls. The Court found that the military judge erred in admitting the evidence, because it branded appellant, who was a convicted thief, as a "sexual deviant or molester of teenage girls." *Zakaria*, 38 M.J. at 283. The nature of the LORs in appellant's case is not as inflammatory as those in *Zakaria*.

We find that the military judge did not clearly abuse his discretion by admitting the two LORs. They were proper personnel documents which reflected on appellant's mili-

tary character. R.C.M. 1001(b)(2). Applying the military rule evidence balancing test, the probative value of these LORs was not substantially outweighed by the danger of unfair prejudice to appellant.

### Convening Authority's Decision Not to Waive Automatic Forfeitures

■ Following his trial, appellant petitioned the convening authority to waive the automatic forfeitures of pay and allowances and provide them to his dependents as permitted by Article 58b, UCMJ. The convening authority denied this request without explanation. Appellant claims that this was an abuse of discretion. He urges us to treat the convening authority's decision not to waive automatic forfeitures in a manner similar to denial of a request for deferment of confinement. He contends that the convening authority should not be allowed to simply make a blanket denial of the request without declaring some legitimate reason for doing so.

Unlike the guidance provided for deferment of confinement (Article 57(d), UCMJ; R.C.M. 1101(c)), there is currently no MANUAL FOR COURTS-MARTIAL guidance on procedures to use in the application of Article 58b, UCMJ. The statute provides for automatic forfeitures of all pay and allowances in a general court-martial when an accused receives a sentence which includes confinement for more than six months or death, or confinement for six months or less and a dishonorable or bad-conduct discharge or dismissal. Article 58b(a)(2), UCMJ. The statute further provides:

> In any case involving an accused who has dependents, the convening authority or other person acting under section 860 of this title (article 60) may waive any or all of the forfeitures of pay and allowances required by subsection (a) for a period not to exceed six months. Any amount of pay or allowances that, except for the waiver under this subsection, would be forfeited shall be paid, as the convening authority or other person taking actions directs, to the dependents of the accused.

Article 58b(b), UCMJ.

■ We note that unlike Article 57(d), UCMJ, which required an accused to request

deferment of confinement, Article 58b, UCMJ, does not specifically confer standing on an accused to request waiver of forfeitures for his dependents. This may be because the benefit of such a waiver is intended for the dependents themselves, and, unlike deferment of confinement, is not a right or privilege personal to a convicted accused.

■ Regardless, the statute appears to give complete discretion to the convening authority and does not require an explanation of the decision. The statute does not even require a convening authority to respond to a request to waive automatic forfeitures, no matter who makes the request. The convening authority's discretion in this area appears comparable to that exercised when deciding whether to grant an accused clemency. In exercising clemency powers, the convening authority need not explain the thought processes or reasons for not granting clemency. Article 60(c)(2), UCMJ; R.C.M. 1107(b)(1). The power to waive automatic forfeitures is similar to the power to grant clemency except that the benefit does not affect appellant's sentence. And finally, neither Article 58b, UCMJ, nor any other authority of which we are aware, specifically gives us the power the review the convening authority's decision on this matter. We act only with respect to the "findings and sentence as approved by the convening authority." Article 66(c), UCMJ.

### Ex Post Facto Nature of Article 57(a) and 58b

Last, appellant contends that the application of the amendment to Article 57(a), UCMJ, and the new Article 58b, UCMJ, violate the *Ex Post Facto* Clause of the United States Constitution with respect to his case. This issue has been resolved against appellant. *United States v. Pedrazoli,* 45 M.J. 567 (A.F.Ct.Crim.App.1997).

### Conclusion

Based on our ruling concerning the multiplicity of certain specifications, we will consolidate those specifications which are multiplicious and dismiss the surplus specifications. Charge I, specification 5 is amended by substituting "$300" for "$200." Charge I, specification 6 is dismissed. Charge II, specification 1 is amended by substituting "$400" for "$200." Charge II, specification 3 is amended by substituting "$800" for "$200." Charge II, specification 4 is amended by substituting "$800" for "$200." Charge II, specification 12 is amended by substituting "$400" for "$200." Charge II, specifications 2, 5, 6, 7, 8, 9, 10, and 13 are dismissed. *See United States v. Huggins,* 17 M.J. 345 (C.M.A.1984) (summary disposition) (consolidated specifications).

Based on the charges in their original form, the military judge informed the members that the maximum confinement they could impose was 95½ years. Based on our multiplicity ruling, the maximum confinement possible for the remaining charges is 55 years. All other portions of the possible maximum punishment remain the same. Although the appellant's sentence was relatively modest, we cannot be convinced the court members would have sentenced appellant to the same sentence had they been informed the maximum period of confinement was 40 years less than they considered. *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990). Reassessing the sentence in light of the modified findings and the entire record, we approve only so much of appellant's sentence as provides for a bad-conduct discharge, 9 months confinement and reduction to E-1.

The modified findings and the sentence, as reassessed, are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Senior Judge PEARSON and Judge MORGAN, C.H., II, concur.