UNITED STATES, Appellee,

v.

Private First Class Frankie J. CRUSE,
United States Army, Appellant.

ARMY 9601948.

U.S. Army Court of Criminal Appeals.

16 March 1999.

For Appellant: Major Leslie A. Nepper, JA (argued); Colonel John T. Phelps II, JA; Lieutenant Colonel Michael L. Walters, JA; Captain Thomas J. Barrett, JA (on brief); Lieutenant Colonel Adele H. Odegard, JA.

For Appellee: Captain Joseph A. Pixley, JA (argued); Colonel Russell S. Estey, JA; Captain Mary E. Braisted, JA; Captain Joel A. Novak, JA (on brief).

Before JOHNSTON, Senior Judge, SQUIRES, and KAPLAN, Appellate Military Judges.

## OPINION OF THE COURT

SQUIRES, Judge:

Contrary to his pleas, Private First Class (PFC) Cruse was convicted of attempted unpremeditated murder, absence without leave, maiming, and intentional self injury, in violation of Articles 80, 86, 124, and 134, *Uniform Code of Military Justice*, 10 U.S.C. §§ 880, 886, 924, and 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to Private E1.

Oral argument on this case was heard at the United States Military Academy, West Point, New York. Among other issues,[1] appellant contends that the military judge abused his discretion when he denied defense counsel's peremptory challenge of First Lieutenant (1LT) Fisher, one of four female panel members. We agree.

### FACTS

Private First Class Cruse and the victim (CA) engaged in an unstable, tempestuous relationship over a period of eighteen months prior to his committing the offenses for which he was convicted.

On 20 January 1996, while absent without leave, PFC Cruse visited CA at her apartment in Wichita, Kansas. After a brief argument, appellant shot CA in the face with a handgun that CA had purchased earlier for her own protection. After CA escaped to a neighbor's apartment, Cruse shot himself through the frontal lobes of his brain. After months of recovery and rehabilitation, PFC Cruse was tried by court-martial in November 1996 at Fort Riley, Kansas.

### THE COURT

Private First Class Cruse requested trial by members, at least one-third of whom were enlisted. UCMJ art. 25; Rule for Courts-Martial 503(a)(2). Eleven members were sworn at the start of trial on 20 November 1996. Of this number, seven were officers, four were enlisted. Seven were men; four

were women. The record does not tell us the racial, ethnic, religious, or national origin make-up of the court.

The individual and collective voir dire of the court members revealed that the panel included two battalion commanders, Lieutenant Colonel (LTC) Garrett and LTC Reeder. Lieutenant Colonel Reeder, Major (MAJ) Surles, Command Sergeant Major (CSM) Humphries, Sergeant First Class (SFC) Freeman, SFC Carter, and SFC Penny had been closely and personally associated with incidents of domestic violence.

Criminal Investigation Command Investigator White, who testified briefly for the defense, was known in both professional and social capacities by LTC Sundell, LTC Reeder, and 1LT Fisher. These same individuals also socialized with different members of the Fort Riley Staff Judge Advocate's Office.

Both LTC Barum and MAJ Stewart knew the accused and were thoroughly familiar with the facts underlying the court-martial.

Lieutenant Colonel Sundell remembered acting as garrison commander for a period during August 1996, but did not remember signing any paper granting the defense a delay in the Article 32, UCMJ, investigation and had absolutely no knowledge of the case at hand.

First Lieutenant Fisher, an Adjutant General's Corps officer, had an undergraduate degree in psychology. She was the daughter of a police officer and neither she nor her husband believed in keeping guns in the home. The record is silent as to her duty assignment.

### THE CHALLENGES

The only government challenge for cause was against MAJ Stewart due to his knowledge of the accused and facts surrounding the 20 January shootings. Defense counsel joined in this challenge, which was granted.

In succeeding order, defense counsel challenged for cause, MAJ Surles (a person close to him, whom he would not identify, had been

---

1. Our disposition of appellant's first assignment of error obviates the need to consider the remaining three, or those matters raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982).

the victim of a shooting); LTC Barum (knowledge of the case); LTC Garrett (one of the two trial counsel served as his legal advisor and he was in SFC Penny's chain of command); LTC Sundell (appearance of impropriety by signing a piece of paper that would be found amongst the allied papers in the record of trial); and CSM Humphries (inflexible sentencing attitude).

Trial counsel opposed all defense counsel challenges. The military judge denied the challenges against LTC Garrett and LTC Sundell. He granted the challenges against MAJ Surles, LTC Barum, and CSM Humphries. At this point, the court-martial panel was reduced to seven persons, three of whom were women.

Defense counsel then challenged for cause LTC Reeder based on her sister's involvement with domestic violence. The government opposed and the military judge denied the challenge, finding that LTC Reeder's responses showed she was not so affected by her sister's misfortune as to be unable to give PFC Cruse a fair trial.

The government did not exercise its peremptory challenge. Defense counsel then challenged 1LT Fisher peremptorily. In response to the trial counsel's request for an independent basis for the challenge, other than her gender, defense counsel replied:

> Yes, sir. Two or three things. One is that as an attorney, I've drawn an opinion about what I thought her attitude was on previous panels. And frankly, I thought she was not someone who was pro defense, totally absent from her sex. Today, I observed her and it appeared that—I don't know if she was falling asleep, but there were periods that her eyes were definitely shut for a while, or they appeared to be. And those are the two reasons that I put forth.

When the military judge disallowed the challenge, the following exchange occurred:

ADC: I think that the issue of an attorney being able to exercise a challenge, a peremptory challenge on any court member, as long as it's not related to a racial or gender issue, should be allowed. They have one peremptory challenge.

MJ: I understand that, but you are going to have to give me an independent basis. You say her performance on other courts-martial. You don't know what she did on other courts-martial; you just watched her.

ADC: That's correct, sir. That's my opinion based upon questions that were submitted—

MJ: You don't know how she voted.

ADC: That's correct, sir, I do not.

MJ: So I'm not sure you have a basis in fact to raise that position.

ADC: I understand, but I do believe that defense counsel has a right to evaluate someone and in their opinion make a decision on all kinds of criteria that at (sic) outside the scope of *Batson,* of the gender and race—

MJ: You didn't tell me she—you didn't indicate to me that she was hostile today to the defense. You didn't indicate to me that she had a negative attitude to (sic) the defense. You indicated that you didn't like the way she sat. I don't think that's sufficient.

ADC: I guess we can agree to disagree on that.

MJ: Yeah, we'll agree to disagree on that. But if you've got some other basis on LT Fisher, I will consider it. If you have a basis at all that you can tie (sic). I need more than a gut feeling, I don't like this person. Because that basically is, as far as the Court's concern (sic), you may not like her on the panel because she's female. And that's a basis why you cannot remove her. You have to have some independent basis.

ADC: Yes, sir, I specifically said that that's not why it was done. I think that even though they were based on my intuition, that's all they were based on. It had nothing to with her gender.

MJ: I'm not satisfied that you've given me a separate basis.

ADC: Okay, sir. Our next peremptory challenge, then, is Lieutenant Colonel Garrett.

## CURRENT LAW

■ Peremptory challenges in a military tribunal are not constitutionally protected "rights." They are created by the Congress as but one "means to the constitutional end of an impartial jury and a fair trial." *Georgia v. McCollum*, 505 U.S. 42, 57, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); *United States v. Carter*, 25 M.J. 471, 474 (C.M.A.1988); UCMJ art. 41(b).

■ Race, ethnicity, and gender are impermissible grounds for challenging court members and shaping the military panel to one's liking. *United States v. Ruiz*, 49 M.J. 340 (1998); *United States v. Witham*, 47 M.J. 297 (1997), *cert. denied*, — U.S. —, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998); *United States v. Moore*, 28 M.J. 366 (C.M.A.1989). *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *J.E.B. v. Alabama ex rel. TB*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). Rejection of a court member for no reason other than "pigmentation of skin" or "accident of birth" severely erodes the public's confidence in a military justice system where fairness is a hallmark. *See McCollum*, 505 U.S. at 49–50, 112 S.Ct. 2348. *See generally Albert W. Alschuler, The Supreme Court and the Jury: Voir Dire, Peremptory Challenges, and the Review of Jury Verdicts*, 56 U. Chi. L.Rev. 153 (1989); *Young, The Continued Validity of Peremptory Challenges in Courts–Martial*, Army Lawyer (Jan., 1992).

Differences between courts-martial tried by panels and jury trials in the civilian sector, as well as the manner in which court members are selected for service or duty, increase the significance (but not the impropriety) of excluding a single potential court-martial member for an improper reason. *See United States v. Tulloch*, 47 M.J. 283, 287 (1997); *Witham*, 47 M.J. at 304 (J. Effron concurring); *United States v. Moore*, 26 M.J. 692 (A.C.M.R.1988)(en banc). *See generally J.E.B.*, 511 U.S. at 142 n. 13, 114 S.Ct. 1419; *Coulter v. Gilmore*, 155 F.3d 912 (7th Cir.

1998); *United States v. Lorenzo*, 995 F.2d 1448, 1453–54 (9th Cir.1993).

■ For this reason, our superior court has tailored *Batson* and its progeny to military practice. In a series of cases from *United States v. Moore* to *United States v. Ruiz*, the Court of Appeals for the Armed Forces has fashioned a *per se* rule that requires trial counsel to explain every peremptory challenge by the government when that challenge is made against a minority or female member of the court-martial panel, and that "challenged court member is either the only minority member or is one of a very small percentage of minority members on a particular panel." *Ruiz*, 49 M.J. at 344, n. 2. There is no requirement that the opponent of such a challenge make a prima facie showing that the government's strike is motivated by either race or gender in order to force a clear, reasonable, legitimate, and non-discriminating explanation for the challenge. This position was adopted " 'to make it fairer for the accused' because, '[i]n military trials, it would be difficult to show a "pattern" of discrimination from the use of one peremptory challenge in each court-martial.' " *Ruiz*, 49 M.J. at 342 (quoting *United States v. Moore*, 28 M.J. at 368).

The case at hand presents another example of how differences between military panels and civilian juries can affect the law relating to peremptory challenges. In the civilian arena, litigators on both sides of the courtroom, armed with up to twenty peremptory challenges each, attempt to mold the jury called into service for one case, or for a very brief time, into a jury of their own liking. By contrast, court-martial panels are usually selected for periods of much longer duration, often up to six months at a time. Civilian attorneys rarely have had any professional or social contact with the members of the jury they meet in the courthouse. Military trial attorneys see their court members frequently—both in and outside the courtroom. Undergirding the law of peremptory challenges, as demonstrated by this case, is the use to which a defense counsel can put the information he has gleaned from, or about, court members in past courts-mar-

tial in order to challenge them peremptorily in the case about to be tried.

## STANDARD OF REVIEW

■ *Batson* gives trial judges wide discretion to prevent and remedy discriminatory peremptive challenge situations as they arise, for it is the judge who is best situated to watch discrimination develop. *See Purkett v. Elem,* 514 U.S. 765, 767–68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *Koo v. McBride,* 124 F.3d 869 (7th Cir.1997); *McCrory v. Henderson,* 82 F.3d 1243, 1247 (2d Cir.1996). The propriety of the denial of appellant's peremptory challenge of 1LT Fischer is fact-sensitive. *See Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). Accordingly, we review the military judge's ruling for clear error. *See Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. 1712; *United States v. De Gross,* 960 F.2d 1433 (9th Cir. 1992)(en banc); *Rodriguez–Hernandez v. Miranda–Velez,* 132 F.3d 848 (1st Cir.1998).

## DISCUSSION

■ Forcefully and articulately, appellate defense counsel argues that the military judge clearly erred in refusing to excuse 1LT Fisher. First, counsel asserts that the judge erred when he failed to apply the law of *Purkett v. Elem* to the defense's peremptory challenge. This failure improperly shifted the burden of persuasion in justifying the challenge to defense counsel when nearly one-half of the perspective court members were women. *Purkett* modified the second step of the *Batson* analysis so as not to "demand an explanation that is persuasive, or even plausible." *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769. Second, appellate defense counsel argues that even after the burden of justification was improperly shifted to the trial defense counsel, that counsel went on to provide a " 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenge, and that the reason [was] related to the particular case to be tried." *Id.* at 768–769, 115 S.Ct. 1769; *Batson,* 476 U.S. at 98 n. 20, 106 S.Ct. 1712 (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 258, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

Government appellate counsel counters that if the United States Court of Appeals for the Armed Forces is going to apply a modified version of *Batson* and *Purkett* to the government's peremptory challenges, fairness requires that the same rules be applied to defense challenges because it is the equal protection interest of the court member that is at issue. The government further asserts that since trial defense counsel failed to provide the military judge with legitimate reasons **related to the particular case to be tried** for his challenge of 1LT Fischer, the challenge was properly denied.

With the issue thus framed, we must first decide whether the military judge based his ruling on an erroneous view of the law. An erroneous application of the law can lead to reversible error. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). When appellant was tried during November 1996, *Purkett v. Elem* was the established law. Furthermore, there were no pronouncements from our superior court at that time which would have applied *Purkett* differently in military practice.

When trial defense counsel first challenged 1LT Fischer, it was the military judge, not the trial counsel, who raised the specter of gender discrimination. This was proper. *Ruiz,* 49 M.J. at 343–44. Having been prodded into action by the judge, trial counsel requested a gender-neutral explanation for the challenge. The assistant defense counsel provided two: 1LT Fisher's performance and attitude on prior courts-martial showed she was not "pro defense," and it appeared she was falling asleep. Trial counsel contended that 1LT Fischer's performance in past courts-martial or defense counsel's evaluation of that performance was irrelevant. When the military judge agreed and disallowed the defense's peremptory challenge, he clearly erred as a matter of law.

First, the assistant defense counsel's explanation for his challenge was "legitimate." While *Purkett* does not equate "legitimacy" with "makes sense," counsel's explanation also made sense. No defense counsel wants a court member whom the defense team perceives to be "pro-prosecution" to sit on

any case. Being "pro-government" or "anti-defense" is certainly not a stereotypical characteristic of any racial group or gender. Counsel's reason for the challenge denied no one equal protection. *See Purkett*, 514 U.S. at 769, 115 S.Ct. 1769; *Hernandez*, 500 U.S. at 359, 111 S.Ct. 1859.

Second, the military judge's refusal to allow defense counsel to use information gleaned in prior courts-martial as a basis for a peremptory challenge in the appellant's trial ("the particular case to be tried," *Batson*, 476 U.S. at 98, 106 S.Ct. 1712) denied the defendant his peremptory challenge of a member whom he desired not to sit in judgment of his actions. If appellant's counsel perceived an anti-defense bias in the court member based on questions the member had asked or answered in prior trials, or even in discussions with her outside of the courtroom, that counsel was entitled to use any and all of this race- or gender-neutral material in making a peremptory challenge. Civilian counsel see prospective jurors once—for a "particular case." Military practice is different. No counsel can, or should, be expected to forget his or her experiences with a prospective court-member.[2] As the Supreme Court explained: "While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable." *Swain v. Alabama*, 380 U.S. 202, 220, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)(*citing Hayes v. State of Missouri*, 120 U.S. 68, 7 S.Ct. 350, 30 L.Ed. 578 (1887)); *see United States v. Annigoni*, 96 F.3d 1132 (9th Cir.1996). Real or imagined, trial defense counsel felt 1LT Fisher was partial to the government and he was thus entitled to challenge her peremptorily.

■ We find nothing about defense counsel's challenge of 1LT Fisher which demonstrates that he was trying to rid the court of female members. To the contrary, the record shows that trial defense counsel, in a haphazard manner, was attempting to rid the court of its officer members. He challenged every officer for cause except 1LT Fisher, and based upon the record before us, we seriously doubt whether such a challenge would have been granted. Even if defense counsel had tried to eliminate **female officers**, as opposed to **all** females, from the court's membership, we do not find this to be a cognizable group subject to a *Batson* analysis. *Cf. United States v. Nichols*, 937 F.2d 1257, 1262 (7th Cir.1991) (Black women not discrete group cognizable under *Batson*); *United States v. Dennis*, 804 F.2d 1208, 1210 (11th Cir.1986), *cert. denied*, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987)(black males not a cognizable racial group). Had defense counsel's aim been to excuse all female members of the court-martial panel, he surely would have causally challenged SFC Freeman based on the fact that she had been the victim of domestic violence, as related during voir dire.

Finally, we find no magic in the fact that three of the seven court members remaining when 1LT Fisher was challenged were females. It is not the number of minorities who might remain on a panel or jury when a particular challenge is opposed that controls the outcome; it is the explanation for the peremptive challenge that is persuasive. *See Turner v. Marshall*, 63 F.3d 807 (9th Cir. 1995); *United States v. Omoruyi*, 7 F.3d 880 (9th Cir.1993). *Batson* is violated if one potential court member is excluded from service for an impermissible reason. *See J.E.B.*, 511 U.S. at 142 n. 3, 511 U.S. 127.

■ In the final analysis, we find that trial defense counsel's peremptory challenge of 1LT Fisher was based on non-discriminatory facts solidly within his arsenal of information. Much like the prosecutor's peremptory challenge of MAJ Larson, a female court member in *United States v. Bradley*, 47 M.J. 715 (A.F.Ct.Crim.App.1997), the basis for challenging 1LT Fisher lay in her prior court-martial service. There is no requirement that a peremptory challenge be sup-

---

2. We do not read the majority's dicta in *Ruiz* concerning challenges based on "occupation" as precluding peremptory challenges based solely on the court member's position (commander, line officer, staff officer, hospital administrator, club manager, and the like). Of course, if the challenge is found to be pretextual for an underlying, undisclosed prohibited practice, it must be rejected.

ported by the voir dire conducted at appellant's court-martial. *United States v. St. Fort,* 26 M.J. 764 (A.C.M.R.1988). The military judge's questioning of the trial defense counsel concerning his challenge took on the air of justifying a challenge for cause. Although the military judge failed to follow *Batson's* three-step procedure for resolving such issues and unfairly shifted the burden to the proponent (defense counsel) to justify the strike prior to the government establishing a prima facie case of purposeful discrimination, the explanation offered by counsel was clear, reasonably specific, and presented legitimate reasons why 1LT Fisher should not sit in judgment of PFC Cruse. *See Tulloch,* 47 M.J. at 287.

### REMEDY

Having found that the military judge clearly erred in his denial of trial defense counsel's peremptory challenge of 1LT Fisher, we now must determine whether that error was prejudicial. *See* UCMJ art. 59a.

All of the federal circuits which have addressed this issue have found that when a defendant is erroneously denied his "right" to a peremptory challenge, automatic reversal results. *Annigoni,* 96 F.3d at 1141 and cases cited therein. We can find no case where our superior court has applied a harmless-error analysis to the erroneous denial of a peremptory challenge.

In *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), the Supreme Court upheld Ross' conviction even though the trial court erred in denying the accused's challenge for cause of a particular juror. The highest court found no prejudice because Ross had been allowed all of his peremptory challenges and used one to remove the lone juror whom he had unsuccessfully challenged for cause. Unlike the case under consideration, the juror in *Ross* never sat in judgment of the defendant.

■ To resolve this case, we need not decide whether the automatic reversal rule employed by the federal circuits applies to military practice. Rather, in applying a harmless error analysis, we cannot determine that the verdict was not "swayed" by the error. *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Accordingly, we find that the improper denial of the peremptory challenge of 1LT Fisher materially prejudiced the substantial rights of this appellant. UCMJ art. 59(a).

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge JOHNSTON and Judge KAPLAN concur.