UNITED STATES

v.

**Glenn E. HURN, Corporal (E–4), U.S. Marine Corps.**

**NMCM 98 00200.**

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 9 April 1997.

Decided 29 Dec. 1999.

**630**

LT Dale O. Harris, JAGC, USNR, Appellate Defense Counsel.

LT Kevin S. Rosenberg, JAGC, USNR, Appellate Government Counsel.

Before LEO, Senior Judge, ANDERSON and ROLPH, Appellate Military Judges.

ANDERSON, Judge:

Contrary to his pleas, the appellant was found guilty of rape of a child under 16 years of age, larceny of a motor vehicle, forcible sodomy with a child under 16 years of age, four specifications of assault consummated by a battery on a child under 16 years of age, indecent acts with a child under 16 years of age, and indecent assault in violation of Articles 120, 121, 125, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920,

921, 925, 928, and 934 (1994). A panel of officer and enlisted members sitting as a general court-martial sentenced him to confinement for life, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

After carefully considering the record of trial, the 15 assignments of error, the Government's response, and oral arguments, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ, 10 U.S.C.A. §§ 859(a) and 866(c). We discuss below the six assignments of error that warrant comment. The remaining assignments of error, raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), have been considered and are found to be without merit.[1]

**Peremptory Challenge**

■ In his first assignment of error, the appellant contends that the military judge erred by granting the trial counsel's peremptory challenge against the sole non-Caucasion member of the court-martial, where the trial counsel did not advance a race-neutral reason for the challenge. Although we find error in the military judge's ruling, the error was not preserved and was thus waived.

Following group and individual voir dire of the members and challenges for cause, the military judge asked the Government whether it desired to exercise its peremptory challenge. The following exchange took place:

1. VII. APPELLANT WAS DENIED DUE PROCESS OF LAW BY THE PERJURED TESTIMONY OF TWO GOVERNMENT WITNESSES; VIII. APPELLANT'S CONFIDENTIAL STATEMENTS DURING A SANITY EVALUATION WERE IMPROPERLY ADMITTED AT TRIAL; IX. ARTICLE 16, UCMJ, 10 U.S.C.A. § 816, IS UNCONSTITUTIONAL BECAUSE IT PERMITS JURIES CONSISTING OF LESS THAN TWELVE MEMBERS, THEREBY DENYING APPELLANT DUE PROCESS OF LAW; X. THE MILITARY JUDGE ERRED BY NOT INSTRUCTING THE MEMBERS THAT MAJOR DEPRESSION WAS A SEVERE MENTAL DISEASE OR DEFECT; XII. THE SANITY EVALUATION CONDUCTED BY THE GOVERNMENT WAS INADEQUATE AS A MATTER OF LAW; XIII. APPELLANT SUFFERED ILLEGAL PRETRIAL

CONFINEMENT, IN VIOLATION OF ARTICLE 13, UCMJ; XIV. APPELLANT SUFFERED CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT; XV. APPELLANT'S RIGHT AGAINST SELF–INCRIMINATION, RIGHT TO DUE PROCESS, AND THE EIGHTH AMENDMENT PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT WERE VIOLATED BY THE UNITED STATES DISCIPLINARY BARRACKS' REVOCATION OF ADMINISTRATIVE "GOOD TIME" CREDIT; XVI. THE TRIAL COUNSEL ENGAGED IN PROSECUTORIAL MISCONDUCT BY USING HIS PEREMPTORY CHALLENGE AGAINST LTCOL AYALA, THE ONLY MINORITY MEMBER DETAILED TO THE COURT–MARTIAL. (Note that there was no assignment of error XI.)

MJ: Government, do you care to use your peremptory challenge?

TC: Yes, sir. We'd perempt (sic) Colonel Ayala.

MJ: All right, thank you. Defense, would you care to use your peremptory challenge?

ADC: We would, sir, but we'd like to ask for a race-neutral basis for the challenge on Colonel Ayala.

MJ: What?

ADC: We'd like to know—

MJ: Colonel Ayala appears to be of Hispanic descent.

ADC: Yes, sir. I think that Batson or its progeny has extended the doctrine to—

MJ: Not as far as you're pushing it, but go ahead anyway, government, and put it on the record why you want to get rid of Colonel Ayala.

TC: Sir, the reason the government actually exercised the peremptory was to protect the panel for quorum.

MJ: Thank you, that's race neutral. Go ahead, defense. Do you want to use it or not?

ADC: Yes, sir, we'd like to peremptorily challenge Colonel Blickensderfer.

Record at 118.

The member who was peremptorily challenged by the Government, Lieutenant Colonel Ayala, was Hispanic, and the only non-Caucasian on the original 10–member panel. The appellant is an African–American. At the time of the Government's peremptory challenge, five officers and three enlisted members remained on the panel. The defense counsel posed no objection to the reason offered by the Government in support of its peremptory challenge. The appellant's failure to object to the reason offered by the Government for the peremptory challenge waived the issue on appeal. *United States v. Walker*, 50 M.J. 749 (N.M.Ct.Crim.App.1999), *pet. denied*, 52 M.J. 473 (1999). We find no plain error. *See* Art. 59(a), UCMJ; *United States v. Powell*, 49 M.J. 460, 461–65 (1998); *United States v. Fisher*, 21 M.J. 327, 328 (C.M.A.1986).

Even if the issue had been preserved, we would provide no relief. A criminal defendant may object to a race-based peremptory challenge by the Government, even though he and the excluded member do not share the same race. *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *United States v. Woods*, 39 M.J. 1074, 1076 (A.C.M.R.1994). *See also United States v. Greene*, 36 M.J. 274, 278 n. 3 (C.M.A.1993); *United States v. Santiago–Davila*, 26 M.J. 380, 389–92 (C.M.A.1988). A Government counsel is then required to explain the reason for the challenge. *United States v. Ruiz*, 49 M.J. 340, 344 n. 2 (1998); *United States v. Moore*, 28 M.J 366, 368 (C.M.A.1989); *United States v. Cruse*, 50 M.J. 592, 595 (Army Ct.Crim.App.1999). The explanation given must be race-neutral, related to the case, and legitimate (i.e., neither unreasonable, implausible, or nonsensical, or a pretext for intentional or purposeful discrimination). *United States v. Tulloch*, 47 M.J. 283, 285–87 (1997); *Moore*, 28 M.J. at 369.

In this case, the Government counsel justified his peremptory challenge of the sole minority member of the panel in order "to protect the panel for quorum." Such tactical jockeying is known as playing the "numbers game." *United States v. Witham*, 47 M.J. 297, 299 (1997); *United States v. Newson*, 29 M.J. 17, 19–20 n. 1 (C.M.A.1989); *See United States v. Fetch*, 17 C.M.R. 836, 844 (A.C.M. 1954); *United States v. Simoy*, 46 M.J. 592, 627 (A.F.Ct.Crim.App.1996). By eliminating one of the remaining five officers, the Government counsel was ensuring that if the defense counsel exercised his peremptory challenge against one of the enlisted members, the panel would remain above the one-third enlisted membership requirement. Art. 25(c)(1), UCMJ, 10 U.S.C.A. § 825(c)(1).

The military judge accepted the Government's explanation as race-neutral, but failed, as he was required to do, to determine on the record whether the explanation was related to the case and legitimate. *Greene*, 36 M.J. at 281. Specifically, the military judge should have inquired as to why this "numbers game" challenge was directed at the lone minority member of the panel. Despite

this failure, we can assume from our reading of the record that implicit in his acceptance of the Government's explanation was a determination that it was related to the case and legitimate. *See United States v. Gray*, 51 M.J. 1, 34–35 (1999).

■ Where we find error is in the military judge's implied determination that the reason given was legitimate. Generally, a tactical explanation, such as the use of the "numbers game," will be insufficient to sustain a peremptory challenge of a minority member. *See United States v. Gibbs*, 174 F.3d 762, 793–94 (6th Cir.1999). In this case, if the Government counsel had simply wanted to play the "numbers game," he could just as easily have chosen any of the four remaining Caucasian officer members to challenge. The fact that he challenged the sole minority officer rather than any one of the four Caucasian officers required a further, race-neutral explanation. *See Gibbs*, 174 F.3d at 794. The Government counsel needed to specifically address why he challenged this particular member.

Through a post-trial affidavit, the Government counsel explains that in addition to the "numbers game" explanation, he challenged the minority member because of his personal knowledge[2] of that member's heavy workload. Affidavit of John R. Marti of 8 Nov 1999.[3] We find this reason to be race-neutral, related to the case, and legitimate. *See State v. Hernandez*, 823 P.2d 1309 (Ariz.Ct. App.1991) (striking prospective juror because of perceived or anticipated fatigue caused by working two jobs held to be acceptable, neutral explanation for peremptory strike). *See also Cruse*, 50 M.J. at 596–98 (holding that court member's anti-defense bias exhibited in prior trials was legitimate explanation for peremptory challenge). Consequently, had

the appellant preserved the peremptory challenge issue, we would have sustained the Government's challenge.

### Factual Sufficiency

■ In his second assignment of error, the appellant asserts that because at the time of the offenses he suffered from a severe mental disease or defect and was unable to appreciate the nature and wrongfulness of his actions, the evidence is factually insufficient to sustain his conviction. The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). After carefully reviewing the record, we find that the evidence satisfies this test, and we are convinced of the appellant's guilt beyond a reasonable doubt.

### Sentence Appropriateness

■ In his third assignment of error, the appellant contends that his sentence, including confinement for life, is inappropriately severe. We have carefully reviewed the record of trial and find that the sentence is appropriate in all respects for these offenses and this offender. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982)(citing *United States v. Mamaluy*, 10 C.M.A. 102, 106–07, 27 C.M.R. 176, 180–81 (1959)).

The offenses committed by the appellant were heinous, deserving of the maximum punishment. The appellant, a noncommissioned officer, raped his 14–year–old stepdaughter on numerous occasions over a six month time frame. When she was experiencing her menstrual cycle, instead of raping her, he would move his penis between her

---

2. "There is no requirement that a peremptory challenge be supported by the voir dire conducted at appellant's court-martial." *Cruse*, 50 M.J. at 597–98. The challenge can be based on answers that a member gave in prior trials, or on matters learned from a member "in discussions with [counsel] outside of the courtroom." *Id.* at 597.

3. We accept the post-hoc rationale provided by the Government counsel with a high degree of caution. We note in this regard, however, that

the appellant did not file a conflicting affidavit from either the trial defense counsel or the member at issue. Although a post-trial affidavit may be used to explain the reason for or the intent behind a peremptory challenge of a minority member, a limited fact-finding hearing authorized by *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967) will often be necessary. *See Gray*, 51 M.J. at 65–71 (Effron, J., dissenting); *Ruiz*, 49 M.J. at 344–45; *Moore*, 28 M.J. at 368–69.

breasts until he ejaculated. He also forced her to perform oral sex on him on numerous occasions. In a letter written to his wife from the brig, the appellant admitted to committing acts of sexual abuse on his stepdaughter on about 33 occasions. Prosecution Exhibit 9 at 10–11. When his stepdaughter was uncooperative or upset him, he assaulted her by holding her head under running water, choking her, and placing a pillow over her face. Once the allegations of the sexual abuse came to light and the appellant was detained by his command, he stole a car and fled.

At trial, the defense psychologist made the following damaging comments about the appellant's future dangerousness:

> I think that [the appellant] is dangerous. I think the behaviors that he demonstrated were potentially life-threatening. I think that they are dangerous. Again, it's prompted by a very strong drive or urge to get again in almost a psychotic way this child or people to respond to him. Fortunately this behavior was interrupted by [his stepdaughter's] finally coming to authorities and alerting them that this was going on. It is frightening to think about what might have happened had this not intervened.... [T]his person needs to be in a hospital designed for a safe setting where these aberrant thoughts and behaviors can be adequately treated.

Record at 312.

In addition, a child psychologist testified in aggravation that the stepdaughter was very traumatized by the sexual abuse, exhibited many of the symptoms of post-traumatic stress disorder, and would need therapy to avoid chronic depression and anxiety, as well as problems in relating to others. Record at 428–29.

Although we are sympathetic to the evidence of the appellant's psychological problems and his impoverished and abusive childhood, after reviewing the entire record, we nonetheless find that the balance between the appellant's crimes and the approved sentence was fairly struck. We are confident that the members gave individualized consideration to the nature of the offenses and the character of the offender in reaching a just

sentence. To grant sentence relief at this point would be to engage in clemency, a prerogative reserved for the convening authority. *United States v. Spurlin*, 33 M.J. 443, 444 (C.M.A.1991); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A.1988).

### Denial of Mitigation Specialist

■ In his fourth assignment of error, the appellant argues that the military judge erred when he denied his motion for the services of a mitigation specialist, who was requested to prepare a comprehensive social history of the appellant. At trial, the military judge concluded that, in view of the fact that the appellant had been represented by counsel for over six months and that a licensed clinical psychologist had been provided by the Government to assist the defense, the appellant had failed to show the necessity for the expert assistance. Record at 13. After reviewing the record, we find that the military judge properly determined that the defense had failed to show the requisite need for the services and that he did not abuse his discretion. *See United States v. Garries*, 22 M.J. 288, 291 (C.M.A.1986). *See also United States v. Gonzalez*, 39 M.J. 459, 460–61 (1994); *United States v. Kelly*, 39 M.J. 235, 237–38 (C.M.A.1994); *United States v. Robinson*, 39 M.J. 88, 89 (C.M.A.1994). Adequate alternatives were available to the appellant to develop, evaluate, and interpret evidence about his background and social history. In fact, such evidence was presented at trial by the appellant's mother, the psychologist hired to assist the defense, and the appellant himself in an unsworn statement. Record at 225–31, 243–63, and 441. The denial of the mitigation specialist did not result in a "fundamentally unfair trial," and we find no material prejudice. *Kelly*, 39 M.J. at 237 (quoting *Moore v. Kemp*, 809 F.2d 702, 712, *cert. denied*, 481 U.S. 1054, 107 S.Ct. 2192 (1987)); Art. 59(a), UCMJ.

### Staff Judge Advocate's Recommendation

■ In his fifth assignment of error, the appellant asserts that the staff judge advocate (SJA) committed plain error by not commenting on his allegation of legal error in his post-trial submission regarding the issue of the denial of a mitigation specialist. Clearly,

the SJA erred by failing to state his agreement or disagreement with the appellant's allegation of error. *See United States v. Hamilton,* 47 M.J. 32, 35 (1997); RULE FOR COURTS-MARTIAL 1106(d)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). However, because we have found that the military judge properly denied the appellant's motion for a mitigation specialist, we conclude that the SJA's error did not prejudice the appellant. *United States v. Welker,* 44 M.J. 85, 89 (1996); *United States v. Hill,* 27 M.J. 293, 297 (C.M.A.1988)(holding that because any legal error claimed by defense counsel "lacked merit and would not have resulted in either a comment by the staff judge advocate favorable to [appellant] or to any 'corrective action' by the convening authority," appellant suffered no prejudice).

### Instructions

 In his sixth assignment of error, the appellant claims that the military judge erred by instructing the members that a "personality disorder" could not constitute a severe mental disease or defect. Because the appellant failed to object to the instruction given or to request any special instruction, we find that he waived this issue. R.C.M. 920(f); *United States v. Smith,* 50 M.J. 451, 455–56 (1999). Even if the issue were not waived, we find no error. In defining a severe mental disease or defect for the members, the military judge employed the standard instruction from the Military Judges' Benchbook: "You are advised that the term 'severe mental disease or defect' can be no better defined in the law than by the use of those terms themselves; however, a severe mental disease or defect does not, in the legal sense, include any abnormality manifested only by repeated criminal or otherwise antisocial conduct or by nonpsychotic behavior disorders and personality disorders." Record at 406; *see* Military Judges' Benchbook, Dept. of the Army Pamphlet 27–9 at 778 (30 Sept. 1996). This definition corresponds closely with that provided in the Manual for Courts–Martial. R.C.M. 706(c)(2)(A)("The term 'severe mental disease or defect' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, or by minor disorders such as nonpsychotic behavior and personality defects."). We agree that the term "severe mental disease or defect" does not include nonpsychotic personality disorders. Obviously, we find no plain error. *See Powell,* 49 M.J. at 461–65.

### Conclusion

Accordingly, we affirm the findings and sentence as approved on review below.