NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 3, 2019[*]
Decided April 5, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-2638

| | |
|---|---|
| GLENN E. HURN, | Appeal from the United States District |
| *Petitioner-Appellant,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 17-1403 |
| | |
| STEVE KALLIS, | Joe Billy McDade, |
| *Respondent-Appellee.* | *Judge.* |

## O R D E R

A general court-martial sentenced Glenn Hurn, a Marine reservist, to life in prison for rape and for some related offenses. After his direct appeal failed in the military courts, he unsuccessfully petitioned a district court in Kansas for a writ of habeas corpus under 28 U.S.C. § 2241. Years later, he asked the Board of Corrections of Naval Records ("the Board") to void his enlistment contract retroactively and thus, he hoped, also to void his conviction. When the Board said no, Hurn filed a second habeas petition, this time in the Central District of Illinois, attacking both the validity of

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

his enlistment contract and the constitutionality of the statute subjecting enlistees to military discipline. The district court denied relief because Hurn had not raised these claims on direct appeal in the military courts or in his first habeas petition. To the extent that Hurn was petitioning for review of the Board's decision, the court ruled that the claims were meritless. We affirm.

Hurn enlisted with the United States Marine Corps Reserve in 1992. The enlistment contract explained that, as a member of the armed forces, Hurn would be "[s]ubject to the military justice system, which means, among other things, that [he] may be tried by military courts-martial." Hurn certified that he carefully read the document and that the recruiter answered his questions. Some years later, he committed the crimes at issue here and a court-martial convicted him and sentenced him to life in prison.

Hurn then launched an extended effort to upend the judgment. He first appealed to the United States Navy-Marine Court of Criminal Appeals, to no avail. *United States v. Hurn*, 52 M.J. 629 (US N-M. Ct. Crim. App. 1999). Among other things, he contested the constitutionality of 10 U.S.C. § 816, which classifies the various types of courts-martial. He turned next to the United States Court of Appeals for the Armed Forces, which initially remanded the case on grounds not relevant here, 55 M.J. 446 (C.A.A.F. 2001), but later affirmed the conviction and sentence when remand yielded the same result, 58 M.J. 199 (C.A.A.F. 2003).

Years later, Hurn filed a petition for a writ of habeas corpus in the District of Kansas, claiming that he did not receive a speedy trial and that his counsel failed to raise that issue. The district court denied the petition, and the Tenth Circuit affirmed. *Hurn v. McGuire*, No. 04-3008-RDR, 2005 WL 1076100 (D. Kan. May 6, 2006), *aff'd* No. 05-3206, 2006 WL 367846 (10th Cir. Feb. 17, 2006).

Hurn next challenged the validity of his enlistment contract before the Board of Corrections of Naval Records. (The Board may alter Marines' records to "correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1).) He asserted that his recruiter intentionally concealed that enlisting would subject Hurn to court-martial if he were charged with committing a non-military offense, like rape, and thus that he would not enjoy the same suite of procedural protections as civilian defendants. But the Board concluded that the contract was valid and it had apprised Hurn that he was susceptible to military justice, even for civilian offenses.

Finally, in 2017, Hurn filed a second habeas petition—the basis of this appeal. He again asserted that his enlistment contract was invalid because the recruiting officer concealed that a court-martial could try him for civilian offenses. He also argued that 10 U.S.C. § 802(c), which subjects constructive enlistees to the Uniform Code of Military Justice, is unconstitutional because it deprives recruits of due process by causing them to unknowingly give up civilian protections. Accordingly, he demanded "immediate release from confinement."

The district court denied Hurn's petition. It accepted two of the government's defenses: that Hurn defaulted his claims about the enlistment contract's validity and § 802's constitutionality because he failed to raise them on direct appeal in the military courts, and that the abuse-of-the-writ doctrine also barred the claims because Hurn omitted them from his first habeas petition. Alternatively, to the extent that the petition could be understood as a request for judicial review of the Board's administrative decision not to correct his record, *see* 10 U.S.C. §§ 1552, 1558, as the government suggested it might, the district court denied relief on the merits.

On appeal, Hurn renews his contentions that his enlistment contract is invalid and that § 802(c) is unconstitutional. He asserts that he could not have pressed these theories on direct appeal or in his first habeas petition because the government concealed them from him. And the Board's decision upholding the contract, he insists, was not supported by substantial evidence.

At the outset, we note that a habeas petition under § 2241 is widely understood to be the conventional means for collaterally reviewing a military tribunal's conviction and sentence. *See Clinton v. Goldsmith*, 526 U.S. 529, 537 n.11 (1999); *United States v. Augenblick*, 393 U.S. 348, 350 n.3 (1969); *Burns v. Wilson*, 346 U.S. 137, 139 & n.1 (1953). (Because courts-martial dissolve after sentencing, a motion asking the sentencing court to vacate the judgment under § 2255 is unavailable. *Prost v. Anderson*, 636 F.3d 578, 588 (10th Cir. 2011) (Gorsuch, J.); *Witham v. United States*, 355 F.3d 501, 505 (6th Cir. 2004).)

We therefore start with the district court's ruling that the habeas claims were barred by procedural default and the abuse-of-the-writ doctrine. First, a military petitioner's unjustified failure to raise a claim on direct appeal bars the claim in any future collateral attack—a doctrine that the caselaw variously calls procedural default, waiver, and failure to exhaust remedies. *See Goldsmith*, 526 U.S. at 537 n.11; *Martinez v. United States*, 914 F.2d 1486, 1488–89 (Fed. Cir. 1990). Second, the abuse-of-the-writ doctrine bars a petitioner who previously sought habeas relief from raising new claims in a later petition if there was no good cause for omitting them from the first one.

*McCleskey v. Zant*, 499 U.S. 467, 494–95 (1991); *see also Esposito v. Ashcroft*, 392 F.3d 549, 550 (2d Cir. 2004) (applying abuse-of-the-writ doctrine to § 2241 petition); *Zayas v. I.N.S.*, 311 F.3d 247, 257 (3d Cir. 2002) (same). Here, Hurn did not challenge his enlistment contract or the constitutionality of § 802 on direct appeal in the military courts or in his first habeas petition. And although he broadly asserts that the government concealed these arguments from him, he does not say how it did so, nor do we see how it could have. On this record, his failure to discover these arguments earlier amounts to neglect, which does not excuse his default or overcome the abuse-of-the-writ doctrine. *See McCleskey*, 499 U.S. at 498.

Finally, if Hurn's petition were construed as an administrative-law challenge to the Board's decision not to "correct" his military record, our bottom-line result would be the same. We assume, for argument's sake, that Hurn's petition can be so construed. And we sidestep the question whether the Board could validly order Hurn's release on these claims, given that 10 U.S.C. § 1552(f) limits the Board's authority over judgments of a court-martial to "correct[ing] a record to reflect actions taken by reviewing authorities" or modifying a sentence "for purposes of clemency." *See Bolton v. Dep't of the Navy Bd. for Corr. of Naval Records*, 914 F.3d 401, 408 (6th Cir. 2019). All of that aside, we would upset the Board's decision only if it were arbitrary or capricious, contrary to law, a result of material factual or administrative error, or not based on substantial evidence. 10 U.S.C. § 1558(f).

Hurn has not met that standard. The Board recognized that his enlistment contract informed him he could be subject to courts-martial, and he certified at that time that he understood the agreement and that the recruiter answered his questions. Crediting Hurn's averments in the body of the contract itself, rather than his attempt to disavow them decades later, was not an error under any standard. Moreover, the Supreme Court held, before Hurn enlisted, that service members may be tried by court-martial for civilian offenses. *See Solorio v. United States*, 483 U.S. 435, 450–51 (1987). Given our resolution of these issues, we need not address the parties' arguments about the constructive-enlistment statute, 10 U.S.C. § 802(c).

AFFIRMED